This is a workmen's compensation case. Respondent appeals from a judgment of the County Court of Bergen County, affirming an award of compensation for temporary disability and 35% of total permanent disability by the Workmen's Compensation Bureau to the petitioner, Irving Gorelick.
The facts may be summarized as follows: Petitioner, Irving Gorelick (hereinafter referred to as Gorelick), had been *Page 408 
in the employ of appellant for eight years and, at the time of the accident, supervised approximately thirty female operators of several types of machines and maintained their machines in workable condition. On August 4, 1947, he began his day's work as usual, apparently in good health. About 9:30 A.M., Gorelick loosened from its stand a new heavy duty binding machine, which had developed operational difficulty, carried it a distance of 4 feet or 5 feet and Gorelick testified that "* * * while I was carrying it, I felt all of a sudden terriffic pains," became dizzy and dropped the machine; that this machine "was the heaviest machine in the place." It was their only heavy duty high speed binding machine and "was brought into the place about only one week before the accident." Max Katzman, appellant's plant superintendent, testified that the machine was "* * * a table extra high speed binding machine;" that it was heavier than the other machines in that department, "* * * was the heaviest machine of this type in the plant;" and that, it remained where Gorelick had dropped it for a period of one week after the accident. Gorelick rested for awhile and the pain continuing, made his way to the office. Unsuccessful efforts of a clerical employee of the appellant to reach a physician, impelled the superintendent of the respondent's plant, Max Katzman, to accompany Gorelick to the company doctor. As the result of his examination, medication was administered and Gorelick was advised to remain at home and return to the doctor the following day. However, petitioner returned to his place of employment, remained on duty for the rest of the day and worked the following day, confining his activities to supervisory work. Three days after the accident, his pains continuing, he sought the advice of a heart specialist, who directed that he remain at home, where he was confined to his bed for about seven weeks. Electro-cardiograms were taken on August 12, 1947, October 6, 1947, and August 27, 1948. Gorelick did not work thereafter for appellant, but undertook to do lighter work in another field. He still complains of continuing pain in his shoulder and chest, inability to close his left hand, shortness of breath, dizziness and confusion. *Page 409 
As is usual in such cases, there was medical testimony supporting the theories of the respective parties.
The only issue asserted by appellant as its ground for a reversal of the judgment below is that petitioner failed "to establish, by a preponderance of probability, that the alleged heart attack arose out of and in the course of his employment."
Dr. Julian Cohen, a cardiac specialist, a witness produced by Gorelick, testified that "there was a definite causal relationship between the episode of coronary occlusion with myocardial infarction that this man suffered and the lifting episode in the shop and, following the sequence of events that have occurred since then, it is also my definite opinion that Mr. Gorelick at the present time is still suffering from the effects of the coronary occlusion and the myocardial infarction that he experienced in August of 1947, when this accident happened." Although Dr. Cohen stated that Gorelick had a pre-existing heart disease, Gorelick testified that he had never been ill previously and had no knowledge of any pre-existing heart condition. Dr. Irving Silverman, the appellant's doctor and a general practitioner, examined and treated Gorelick on the day of the accident. He contradicted Gorelick's testimony as to the treatment administered to and the statements made by Gorelick, when he examined and treated him. Dr. Silverman admitted that he had made no record of the case; that he was testifying from memory, although he had treated approximately 5,000 other patients in the interim. It appears from the Deputy Commissioner's findings that he gave considerable weight to petitioner's testimony and did not place too much reliance on the testimony of Dr. Silverman. We think that under R. 1:2-20 stating, inter alia, "* * * due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses," the Deputy Commissioner who heard and observed the witnesses was in a better position to judge of the weight to be given to the respective testimony of Dr. Silverman and petitioner. Dr. James E. Phelps, a recognized heart specialist, testified for appellant that his examination of the electro-cardiograms taken by Dr. Shapiro on August 12, 1947, revealed *Page 410 
that Gorelick had suffered an acute infarction within a period of "ten to twelve days of the cardiogram;" that it might have occurred "one day previous to the day the cardiogram was taken or twelve days." In response to a hypothetical question Dr. Phelps said:
"A. Well, if the facts as stated are that he had collapsed at the time he lifted, and he had continuous pain, then we have to assume that there is a relationship between the lifting and the accident.
"If his pain is not continuous, if he didn't have collapse, then it would seem that he probably suffered an anginal affair at that time and not his infarction."
Dr. Phelps admitted that in considering the anterior wall infarction in the instant case, pain across the chest and down the left arm are symptoms and he estimated petitioner's partial permanent disability approximately 25% of total.
The rule of law applicable to the case sub judice has been clearly and definitely established in the cases of Lohndorf v.Peper Bros. Paint Co., 134 N.J.L. 156 (Sup. Ct. 1946); affirmed, 135 N.J.L. 352 (E. A. 1946); Grassgreen v.Ridgeley Sportswear Mfg. Co., 2 N.J. Super. 62 (App. Div.
1949), and the recent case of Seiken v. Todd Dry Dock, Inc.,2 N.J. 469 (1949). Mr. Justice Oliphant, speaking for the Supreme Court in Lohndorf v. Peper Bros. Paint Co., supra, whose opinion was adopted by the Court of Errors and Appeals, at pp.
159, 160, stated:
"There is a presumption that any death from heart disease is the result of natural causes. Coronary thrombosis `ordinarily ensues from coronary sclerosis or other morbid state. * * * Theonus is on claimant to establish that the asserted accident was at least a contributory cause without which the occlusion would not have occurred.' Schlegel v. H. Baron Co., 130 N.J.L. 611. "
 * * * * * * *
"* * * `The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, i.e., based upon a preponderance of probabilities according to the common experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses.' Gilbert v.Gilbert Machine Works, Inc., supra [122 N.J.L. 533]; Jones v.Newark Terminal and Trans. Co., 128 Id. 190."
 * * * * * * * *Page 411 
"* * * To render an injury compensable there must be an event or happening, beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not have resulted. * * *"
Judge Colie in Grassgreen v. Ridgeley Sportswear Mfg. Co.,supra, comprehensively reviewed prior decisions involving "heart cases" under the Workmen's Compensation Act and adhered to the legal principles laid down in Lohndorf v. Peper Bros. Paint Co.,supra. In the case of Seiken v. Todd Dry Dock, Inc., supra,
Mr. Justice Ackerson at p. 476, cited with approval Grassgreenv. Ridgeley Sportswear Mfg. Co., supra, and stated:
"A review of the cases decided since the Lohndorf case,supra, shows a general adherence to the view therein expressed that something of an unusual strain or exertion beyond the mere employment itself is required to establish liability; the mere showing that the claimant was performing his routine, everyday tasks, when he suffered a heart attack does not establish a right to workmen's compensation."
From our review of the proofs we conclude that Gorelick has met the test of the rule for determining compensability laid down in the foregoing cases, viz.: that his heart attack was caused by an unusual strain or exertion beyond that normally required in the performance of his duties and that it constituted an accident arising out of and in the course of his employment.
The judgment of the County Court affirming the award of the Workmen's Compensation Bureau is affirmed, with costs. *Page 412