ALICE CAMPBELL *vs.* WALSH-KAISER COMPANY, INC.

MAY 10, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

(For previous decision of case see 72 R. I. 358.)

O'CONNELL, J.  This is a petition by the widow of George J. Campbell, a former employee of the respondent, to recover compensation under the workmen's compensation act, general laws 1938, chapter 300, article III, §2, for herself and two minor dependent children.  After a hearing in the superior court the trial justice granted the petition and a decree in accordance with his decision was thereafter duly entered.  The cause is here on respondent's appeal from that decree.

This cause was before us previously at which time it was remanded to the superior court for a trial *de novo* because of uncertainty in the language used by the trial justice as to the controlling rule of law.  *Campbell* v. *Walsh-Kaiser Co.,* 72 R. I. 358.  Thereafter it was heard by another justice of the superior court and, by agreement of the parties, he decided the cause on the same evidence appearing in the transcript of the first trial.

The evidence discloses that George J. Campbell, husband of the petitioner, had been employed for about nine months as a guard at a shipyard operated by the respondent; that

about noontime on April 9, 1943 he was found lying unconscious near one of the entrance gates which he was tending; that he was removed to a hospital; and that he died on December 28, 1943. The contested issue between the parties was whether he died as the result of an injury by accident arising out of and in the course of his employment or whether his death was due to natural causes.

The decree entered by the trial justice contains the following findings of fact: "1. That George Campbell was employed as a guard to tend a metal gate divided into two sections of fifteen (15) feet each framed by an iron pipe and filled in with metal screen. There was difficulty in moving the gate either by reason of the earth's having heaved, or by reason of the gate's having sagged. 2. That George Campbell was aging, that the arteries of his brain were hardening, that the exertion of moving, or attempting to move, the gate caused a surge of pressure in the brain of George Campbell, which brought about a rupture that ultimately caused his death."

In addition to the usual grounds that the decree is against the law and the evidence, the respondent contends that there is no evidence to support the first and second findings of fact and that the findings set forth in the decree fail to establish that the decedent sustained a personal injury by accident arising out of and in the course of his employment by the respondent which resulted in his death.

From a careful examination of the transcript, we cannot agree with such contentions. It seems clear from the testimony of several witnesses, including some of respondent's own witnesses, that the gate in question was a heavy iron gate, divided into two sections of fifteen feet each, framed by iron pipe, filled in with metal screen, and with three strands of barbed wire on top. Both the wife and daughter of the deceased visited him at the hospital shortly after the accident and talked with him upon his return to consciousness. The wife testified that her husband then told her that he had been lifting a gate and had some kind of a

dizzy spell which seemed to swing him around; that he fell down on a pile of steel; that he got this dizzy spell while he was opening the gate which he had to lift because it was sagging; that it was necessary to open this gate because a truck wanted to go by; and that a crane was blocking the way in front of the gate ordinarily used and in order to let the truck through he had to *lift* the *other gate* and open it.

The daughter testified as to her conversation with her father as follows: "I asked him how he was hurt and he said that he was lifting—working at this certain gate and this Gammino came to the gate to go in and he had an argument with him because he wasn't supposed to go through that gate. And so he finally had to open it for him and it was sagged and he had to lift it—had to lift it up to open it. And there was a crane on the other side blocking the way. That is why only one half was open. Q. Those are double gates? A. Yes. Q. And the gate that was open was blocked by a crane,—that what he told you? A. Yes. The other part was supposed to be shut because the trucks weren't supposed to enter that gate." She also testified that he told her *"when he was lifting the gate * * * he felt something snap in the back of his neck and when that snapped he got sort of dizzy and started to whirl around and he happened to fall on the steel that was around"*; that he struck the back of his head when he fell; and that there was no one around at that time because the truck had gone through. (italics ours)

The above-mentioned testimony, which was unchallenged, was in the circumstances legal evidence that the deceased suffered his injury while lifting a heavy iron gate which had *sagged.* Such evidence is sufficient to support the first finding of fact. The essential factor in that finding is not what caused the gate to sag, but rather whether it had sagged and whether in the existing circumstances it became necessary for the deceased to exert unusual force to open the gate because of the difficulty in moving it.

We are also of the opinion that there was legal evidence to support the second finding of fact. Such evidence must of necessity be largely medical. Doctor Ercole A. Addonizio, who attended the deceased from January 13, 1942 to November 19, 1943, described his various examinations and treatment of the deceased up to the time of the accident. Upon such examinations and treatment as testified to by the doctor and the history of the accident as related to him by the deceased, he expressed his opinion as to the cause of the injury. His testimony as to how the accident occurred, as related to him by the deceased, is substantially the same as that of Campbell's wife and daughter and includes the following question and answer: "Q. Now, as a result of your investigation there with Mr. Campbell and after inquiring and your physical examination, Doctor, would you say that the injury sustained by George Campbell is consistent with the story he gave you as the probable cause of his injury? A. I would say yes."

Doctor Harrison F. Hyer, another witness for petitioner, expressed the opinion that the cerebral hemorrhage suffered by the deceased was due to the strain occasioned by the *lifting* of the gate. He testified that in his judgment deceased's "main injury was due to the lifting which raised the blood pressure enough to cause a cerebral hemorrhage or a cerebral hemorrhage from a vessel already damaged by disease processes. The heavy lifting was enough to cause the hemorrhage." And again when asked if he could express an opinion whether the injury was brought about by the strain of lifting the gate or from natural causes his answer was: "I feel definitely that it came from the strain of lifting the gate and he fell down because of the cerebral hemorrhage and dizziness and the state of shock or collapse that he went into is the result of the hemorrhage. The striking his head was secondary and incidental but it may have contributed further to the brain injury."

Doctor Hyer further testified that in his opinion a sudden strain caused the cerebral hemorrhage which the deceased

sustained and that such a strain may cause a rupture which is "enough to cause death because the rent in the artery will be big enough to allow gross bleeding into the brain substance"; and also that the type of hemiplegia or complete paralysis which the deceased sustained was more likely to come from a strain than from a fall.

The respondent also contends that the first and second findings of fact as set forth in the final decree fail to establish that decedent sustained a personal injury by accident arising out of and in the course of his employment. Several witnesses were presented to prove that the gates were always open and to negative the statements of the deceased to his wife, daughter and physician that he was lifting the gate at the time of his injury. Respondent claims that since opening or lifting a gate was no part of the regular duty or employment of the deceased the petitioner was not entitled to prevail in this case.

However, respondent overlooks the fact that on the record before him the trial justice might properly conclude, even though ordinarily the deceased was not required to open or lift the gate, that in the circumstances of this unusual occasion it became necessary and incidental to his regular occupation to open the *other* gate because a crane was blocking the regular gate; and that it was necessary to lift it because it had sagged. Injury received as a result of such a situation would clearly be the result of his confrontation by an unusual or fortuitous happening, circumstance or condition not incident to the conditions under which the duties of his employment normally were performed. It would constitute an unlooked-for mishap or an untoward event which was not expected or designed, and such injury and its consequent results would constitute an injury by accident arising out of and in the course of his employment by the respondent.

In his rescript the trial justice used the following language: "This court is fully satisfied that the great preponderance of the evidence favors an inference that de-

ceased was aging, that the arteries of his brain were hardening, that the exertion of moving or attempting to move the gate caused a surge of pressure in the brain of deceased, which brought about a rupture that ultimately caused his death. The conclusion is inescapable, that death occurred by reason of an accident sustained by deceased arising out of and in the course of his employment." After a careful examination of the transcript we cannot say that such a conclusion and the findings of fact are not supported by some legal evidence or reasonable inferences therefrom and therefore we cannot disturb the decree.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Arthur N. Votolato,* for petitioner.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr.,* for respondent.