24 N.J. Super. 598 (1953)
95 A.2d 413
SAMUEL MARGOLIES, PETITIONER-APPELLANT,
v.
CRAWFORD CLOTHES, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Heard February 16, 1953.
Decided February 27, 1953.
*599 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Isadore Rabinowitz argued the cause for petitioner-appellant (Mr. Edward H. Saltzman, attorney).
Mr. Thomas J. Brett argued the cause for respondent-respondent (Messrs. O'Brien, Brett & O'Brien, attorneys).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
Appellant suffered a heart attack and sought workmen's compensation therefor. There was no dispute in the County Court that the attack arose out of and during the course of his employment with respondent. The crucial issue presented was whether it was produced by "accident" within the contemplation of the Workmen's Compensation Act. In the Department of Labor the deputy director found that such accident had been established; the County Court found to the contrary on his independent study of the record.
*600 The present test of an accident in this type case is whether or not the heart attack was caused by an unusual or excessive exertion or strain which occurred during the course of, and as an incident of, the employment. Franklin v. U.S. Bronze Powder Works, 6 N.J. Super. 320 (App. Div. 1950), certif. den., 4 N.J. 460 (1950); Seiken v. Todd Dry Dock, 2 N.J. 469 (1949); Grassgreen v. Ridgeley Sportswear, 2 N.J. Super. 62 (App. Div. 1949); Lohndorf v. Peper Bros. Paint Co., 135 N.J.L. 352 (E. & A. 1947).
Margolies had been in respondent's employ as a clothing salesman for a number of years. He worked on a salary and commission.
It appears that at irregular intervals the salesmen moved various parts and kinds of the stock about the store. Approximately four times a year seasonal changes made necessary a more substantial shifting of stock, undoubtedly in order to accommodate the public demand for different styles of clothing.
On January 16, 1951 Margolies was directed by his superior to shift several hundred heavy overcoats from their position on racks in the store to racks in a storeroom which was 25 to 50 feet away. This meant sorting the coats according to size and model as well as carrying them from one place to the other.
The racks were about six feet high and because Margolies is five feet, five and one-half inches tall it was necessary for him to lift the coats down from and up to a point over his head. According to Margolies the coats weighed around seven to nine pounds each (although the employer's witness said the weight was five pounds).
On previous occasions two salesmen were assigned to do the work. Each would carry three or four or, at most, five overcoats at a time until the task was completed. On this occasion, work began in the neighborhood of 9:40 A.M. and, except possibly for a very short period, Margolies was given no assistance. Never before had he been required to move such a large number of coats alone.
*601 Appellant testified that he was conscious of the fact that commissions were earned only when he was on the floor acting in his capacity as salesman. As the result he undertook to carry seven or eight and sometimes ten coats at one time in order to complete the task as quickly as possible. This meant carrying from 35 to 50 pounds, if respondent's witness's estimate is accepted, or from 49 to 90 pounds, if Margolies' estimate is used. It was necessary to extend his arms further than usual in order to accommodate the additional garments; overcoats were more cumbersome to handle than other merchandise because they were heavier and longer.
His attitude toward the task was:
"The work had to be done. I wanted to get down on the floor. My way of living is my selling, and that work had to be done."
In any event, he worked steadily, stopping only once or twice to smoke a cigarette. About one o'clock, when perhaps three-fourths of the coats had been transferred, he felt nauseous, weak, and he started to perspire. After resting for five minutes he resumed work. One load was shifted and just as he got the second batch in his arms he experienced severe pain across the upper chest and extending down his arms to his fingertips. This was accompanied by nausea and by profuse perspiration.
After an unsuccessful effort to walk to a nearby drug store for some tea, he became weaker and the pain greater. As a result in a short time he had to be taken home. There medical aid was procured and a diagnosis of coronary occlusion, with myocardial infarction, was made.
The County Court determined that at the time of the heart attack appellant was engaged in his usual and regular employment and that no unusual or excessive strain or effort had been established. With this conclusion we cannot concur.
Undoubtedly the shifting of overcoats was an incident of Margolies' employment. However, the particular operation here involved was not a daily routine. The witnesses on both *602 sides of the case seem to agree that long intervals separated one shifting from the next. Thus, even though the effort necessary to be engaged in at such intervals was an established incident of the employment, it was not the kind of regular, daily routine effort to which an employee would be expected to accustom himself. Consequently it might be argued with some force that every three months or so the employee, whose regular work was that of clothing salesman, was required to engage in a task which of itself subjected him to an unaccustomed or unusual effort.
However, it is not necessary to dispose of the problem on any such narrow ground. On the occasion in question the work was not done in the normal and customary manner. As already pointed out, the established practice contemplated using the services of two of the salesmen. Obviously under this procedure the transfer of the several hundred overcoats would be accomplished in much less time than if one man worked alone. And in this connection a fact of some psychological influence cannot be overlooked, namely, that with two men working both would be back on the floor making sales for their employer and commissions for themselves in a shorter time than if one were laboring alone in the moving process.
Accordingly, when Margolies found himself in the never before experienced position of doing the work alone, he was driven, as he said, by the urge to get the task done as quickly as possible in order to return to the field of his paramount interest, that is, the sales floor. So in spite of his stature which made it difficult to move the coats to and from the rack and to sort and adjust them, he carried more than he ever did before; the weight was greater than ever before; the added number of coats made them more awkward to handle, and the strain on his arms was greater than on previous occasions. Moreover, it is fairly inferable that he tried to complete the assignment as expeditiously as possible. These circumstances, coupled with the proof of the collapse during the course of the described activity and with the *603 medical testimony of causal relation between the effort or strain and the heart failure, demonstrate, in our judgment, by the greater weight of the evidence that such excessive effort was expended or such unusual strain suffered as to constitute a compensable accident. Cf. Franklin v. U.S. Bronze Powder Works, supra; Pisciotta v. Mahoney-Troast Const. Co., 8 N.J. Super. 213 (App. Div. 1950), certif. den. 5 N.J. 350 (1950).
The judgment of the County Court is reversed and that of the Workmen's Compensation Division is reinstated.