**W. C. CROW, Appellant,**

v.

**MISSOURI IMPLEMENT TRACTOR COM-PANY and Hardware Mutual Casualty Company, Respondents.**

No. 46341.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1957.

Rehearing Denied Dec. 9, 1957.

Joslyn & Joslyn, L. D. Joslyn, T. B. Russell, Charleston, for appellant.

Hyde & Purcell, George R. Wilhoit, Jr., Poplar Bluff, for respondents.

WESTHUES, Judge.

W. C. Crow filed a claim for compensation which the Industrial Commission denied. On appeal to the Circuit Court of

Mississippi County, the order denying compensation was affirmed. An appeal was granted to this court but for lack of jurisdiction, the case was transferred to the Springfield Court of Appeals, 292 S.W.2d 573. That court affirmed the judgment of the circuit court, 301 S.W.2d 423. On application of the claimant, the case was transferred to this court. The case was briefed and argued before this court at the September Session, 1957.

Before the case was argued, a motion was filed wherein it was stated that W. C. Crow died on August 28, 1957. It was also stated that Verda Crow is the widow and only dependent of W. C. Crow and she asked to be substituted as plaintiff-appellant. The motion was taken with the case. No objection was made to the request and the motion is hereby sustained and Verda Crow is hereby substituted as plaintiff-appellant in the place of W. C. Crow, deceased.

There is no dispute as to the material facts in the case. Crow was an employee of the Missouri Tractor Implement Company of Charleston, Missouri. This company was a dealer in farm implements. Crow's general duties were those of a foreman. On August 21, 1954, Crow was injured while aiding one of the other employees in adjusting an elevator of a corn-picking machine. The machine was new and due to paint on the equipment, the turnbuckle could not be turned and the elevator adjusted in the usual way. So, it was necessary to disengage the bail-crank links so the turnbuckle could be adjusted with a wrench. Disengaging the bail-crank links would remove the support of the elevator which was about 12 feet in length and extended at a 45-degree angle from the lower rear part of the corn picker. It was, therefore, necessary for some one to support the elevator while the turnbuckle and the bail-crank links were being adjusted. Crow placed himself under the elevator with upstretched arms in readiness to support the elevator while the other employee disengaged the bail-crank links from the sockets. When the last of the links was disengaged, the elevator was supported by Crow. The weight of this elevator was more than 150 lbs. Concerning the occurrence at the crucial time here involved, we quote from Crow's evidence:

"Q. After he took the first one out, describe what he then did? A. He pulled the cotter key on the other side and took the hammer and tapped that one out.

"Q. And when he tapped that one out was there anything, any part of the mechanism intact which would support the elevator? A. No, sir.

"Q. What happened when he tapped this latter elevator bail crank link out of the elevator bail crank? A. It dropped right on my hands and arms.

"Q. Just describe the effect at that time. A. It was just so heavy it felt like it pushed my shoulders down—my arms down in my shoulders. Hurt across the bottom of my chest.

"Q. What, if anything, was the effect at that time on the muscles on your legs and body, etc.? A. It was hard on them because I had more there than I could hold.

"Q. What did you do or say at that time? A. I said, 'You will have to hurry.'

"Q. Then what—do you have any idea how long it was before he was able to make the connection again? A. Oh, it could not have been over a minute or two. He hooked up the rod he had already adjusted.

"Q. Then after that occurred, what, if anything, did you do after he made the connection? A. After he made the connection, I went back to my office and sat down and stayed there, I guess for thirty minutes."

Crow had been in good health before this incident. The evidence was that the strain

experienced in holding the elevator caused Crow to suffer an acute coronary occlusion. For a more detailed statement of facts, see the opinion of the court of appeals, supra.

The full Industrial Commission made a finding of facts and conclusions of law which we quote in part as follows: "* * * We further find from all the evidence that the incident or events that occurred on August 21, 1954, while the employee was working for said employer, subjected employee to an abnormal strain or exertion, which we find caused the employee to sustain an acute coronary occlusion or thrombosis. * * * We further find from all the evidence that this employee, W. C. Crow, sustained an abnormal strain while holding up the elevator to an International two-row Corn Picker, Model No. 2–ME. We further find that this abnormal strain was not preceded or accompanied by any unusual or unexpected occurrence and, therefore, was not an accident as the same is defined by the Missouri Workmen's Compensation·Act and judicial decisions of said definition. Howard v. St. Louis Independent Packing Co., Mo.App., 260 S.W.2d 844; Kendrick v. Sheffield Steel Corp., Mo.App., 166 S.W.2d 590. Compensation, therefore, must be and the same is hereby denied." It is conceded in this case that the evidence supported the finding of the Commission that Crow "sustained an abnormal strain" and that it caused the claimant to suffer an acute coronary occlusion. The Commission's finding that the abnormal strain or exertion was not an accident was based on the cases cited by the Commission.

The question before us is whether an unusual or abnormal strain causing injury to a workman may be classified as an accident as that term is defined in the Missouri Workmen's Compensation Act, Chapter 287, RSMo 1949, V.A.M.S. The word "accident" is defined as follows in Sec. 287.020, subd. 2: "The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context,' be construed to mean an unexpected or unforeseen event happening suddenly and vio-

lently, with or without human fault and producing at the time objective symptoms of an injury."

In the case of Howard v. ·St. Louis Independent Packing Co., Mo.App., 260 S.W.2d 844, 845, the claimant's duties were to carry quarters of beef from one point in the plant to another. On the occasion when the injury occurred, the employee felt a pain in his back at the very moment when a quarter of beef, which weighed more than the ordinary run, was placed on his shoulder. The Compensation Commission found there had been an accident and then specifically that the " 'Employee suffered unusual strain when a forequarter of beef struck his left shoulder with unusual force as he swung said beef on his shoulder.' " The St. Louis Court of Appeals ruled that "where the injury results from the intentional act of the employee in exerting muscular force" it cannot be classified as an accident under the Compensation Act unless there is "some unusual occurrence, such as a slip, or a fall, *or an abnormal strain.*" (Emphasis ours.) 260 S.W.2d loc. cit. 845(1). The following cases were cited in support of that statement: "State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40; Kendrick v. Sheffield Steel Corporation, Mo.App., 166 S.W.2d 590; Screeton v. F. W. Woolworth Co., Mo. App., 166 S.W.2d 589; Sciortino v. E. Salia & Co., Mo.App., 157 S.W.2d 535; Palmer v. Knapp-Monarch Co., Mo.App., 247 S.W.2d 341; Higbee v. A. P. Green Fire Brick Co., Mo.App., 191 S.W.2d 257." The court then went on to say, "In this case the employee admitted that there was no slip or fall, and that the routine he followed in swinging the beef away from him and in turning to receive it on his shoulder was the usual routine, and the same he had followed in all the years that he had been employed as a lugger. In fact, his only contention of anything out of the ordinary was that the forequarter came down upon his shoulder with 'an unusual force—more than ever before', which was accounted for by showing that the particular forequarter

happened to be a bull forequarter weighing from 275 to 300 pounds according to the employee's testimony, or from 225 to 250 pounds according to the finding of the referee." It is significant that in these comments, the court said there was no slip or fall but did not say there was no abnormal strain. The court reversed the judgment of the circuit court which had affirmed an order of the Commission allowing compensation.

The cases cited by the court of appeals in support of its ruling in the Howard case do not sustain the conclusions of the court that an abnormal strain without a slip or fall cannot be classified as an accident under the Compensation Act. We shall briefly review a number of those cases. In State ex rel. Hussman-Ligonier Co. v. Hughes, supra, the Commission had found that (153 S.W.2d loc. cit. 41), "that employee, at the time of said alleged accident, was not subjected to any unusual strain or exertion, but was doing the usual and ordinary work incidental to his employment, and that the condition or disability of which he complains was the result of natural causes." The vital difference between the two cases is that in the Howard case the abnormal strain caused the injury complained of while in the Hussman-Ligonier case, the injury was the result of natural causes and no abnormal strain was present.

The same is true in the case of Higbee v. A. P. Green Fire Brick Co., supra. The court of appeals found that there was no evidence to sustain a finding of an abnormal strain. So, it was in the Kendrick case, supra, where the court of appeals found that, 166 S.W.2d loc. cit. 593(4), "There was no unexpected or unforeseen event which happened while Kendrick was attempting to line up the bar that had become jammed, that is, no slip, or fall, or abnormal strain, and nothing in the way of a mishap save the occurrence of the injury itself, which, although unexpected and unforeseen, was the result, and not an accidental event producing the result."

We have examined the other cases cited by the court of appeals, supra, and have failed to find wherein any of them support the theory that an abnormal strain causing injury may not be classified as an accident under the Compensation Act.

We do find cases wherein compensation has been allowed where an abnormal strain caused injury. On examination of the following cases, it will be found that compensation was allowed wherein abnormal strain was the principal event causing injury. There were present in some of the cases conditions which brought on or made necessary the abnormal strain. In Baird v. Gleaner Harvester Corporation, Mo.App., 172 S.W.2d 892, the employee was injured because some extra weight was suddenly shifted to him and he sustained an injury to his back. In State ex rel. United Transports, Inc. v. Blair, 352 Mo. 1091, 180 S.W. 2d 737, the employee was injured while attempting to loosen a lug which held a tire on an automobile. This court en banc, 180 S.W.2d loc. cit. 738(1, 2), said, "The rupture in the case at bar was not the result of a chronic condition but was caused, 'When the usual or ordinary force would not cause such removal (of the lug which held the tire), complainant pulled and tugged on the pipe to loosen the lug and, in so doing, according to the evidence before the commission, received the strain, afterward found to be a bad rupture.' In other words, the lug which held the tire could not be removed in the usual manner, but had to be removed in the 'abnormal' manner by 'putting his foot on the pipe' and, therefore, was an 'accident' under subsection (b) of Section 3695, supra." In that case, it was an abnormal strain which caused the injury.

We have examined many cases from other jurisdictions. We find that the general rule is that an abnormal strain causing injury to workman may be classified as an accident. See Margolies v. Crawford Clothes, 24 N.J.Super. 598, 95 A.2d 413; Gorelick v. Paramount Slipper Co., 5 N.J. Super. 406, 69 A.2d 337; Campbell v.

Walsh-Kaiser Co., 77 R.I. 67, 73 A.2d 239; Maryland Cas. Co. v. Dixon, 83 Ga.App. 172, 63 S.E.2d 272; Teater v. Dairymen's Cooperative Creamery, 68 Idaho 152, 190 P.2d 687; La Dew v. La Borde, 216 Miss. 598, 63 So.2d 56; Boettcher Oil & Gas Co. v. Lamb, 208 Okl. 192, 255 P.2d 277; Oceanic Fisheries Co. v. Alaska Industrial Board, D.C., 109 F.Supp. 103; E. Baggot Co. v. Industrial Comm., 290 Ill. 530, 125 N.E. 254, loc. cit. 255(1); Kelly-Springfield Tire Co. v. Daniels, 199 Md. 156, 85 A.2d 795, loc. cit. 797, 798(1); Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912, 13 A.L.R. 427; and Virginia Electric and Power Co. v. Quann, 197 Va. 9, 87 S.E.2d 624, loc. cit. 626(3). See also 58 Am.Jur. 756, Sec. 255, and 71 C.J. 619, Sec. 372, and cases there cited.

In the Kelly-Springfield Tire Co. case, supra, the Supreme Court of Maryland denied compensation because the evidence did not disclose that the injured employee experienced an unusual strain. The court stated the general rule to be as follows, 85 A.2d loc. cit. 797(1): "This broad rule, which has been adopted quite generally in the United States following the decisions in England, has not been fully accepted in Maryland. In this State the sudden and unexpected rupture of some portion of the internal structure of the body, or the failure of some essential function of the body, is held to be an accidental injury only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment."

We ruled in De Lille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834, and in State ex rel. Hussman-Ligonier Co. v. Hughes, supra, that where an injury is the result of natural causes and not the result of an accident while the employee is performing his usual duties, compensation may not be awarded. However, where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall. The following cases holding to the contrary are hereby overruled: Kendrick v. Sheffield Steel Corporation, Mo. App., 166 S.W.2d 590; Howard v. St. Louis Independent Packing Co., Mo.App., 260 S. W.2d 844; Palmer v. Knapp-Monarch Co., Mo.App., 247 S.W.2d 341, and the opinion in the present case by the Springfield Court of Appeals, Crow v. Missouri Implement Tractor Company, 301 S.W.2d 423.

The judgment of the circuit court affirming the order of the Industrial Commission is hereby reversed with directions to the circuit court to set aside its judgment herein and to enter a new judgment reversing the order of the Industrial Commission and to remand the case to the Commission for further action not inconsistent with this opinion.

It is so ordered.

All concur.