Delphia D. WITHERS, Claimant-Respondent,

v.

MIDWEST FOOTWEAR, INC., Employer, and American Insurance Company, Insurer, Appellants.

No. 32709.

St. Louis Court of Appeals. Missouri.

Nov. 21, 1967.

Evans & Dixon, Edward W. Warner, Emil J. Kohl, St. Louis, for appellants.

Luke, Cunliff, Wilson, Herr & Chavaux, William J. McCluggage, St. Louis, for claimant-respondent.

TOWNSEND, Commissioner.

Workmen's Compensation proceeding in which the Referee and the Industrial Commission rejected employee's claim for compensation. Upon appeal to the Circuit Court of Franklin County, the final award of the Commission was reversed and the cause remanded to the Commission for further proceedings. The employer and its insurer appeal.

The employee's original claim recites the circumstances of his injury in the following terms: "Employee was in an awkward position bending over and attempting to set down a box of heels and reaching over other boxes, when he fell forward on his knees and his back and legs were injured." The employer's report of injury, made to the Division of Workmen's Compensation, states: "Strained Back while lifting run of insoles. Lifted box from shoulder height and turned too sharpley (sic) and quick, twisting it." The referee found that " * * * the employee has failed to sustain the burden of proof that * * * he sustained an accidental injury * * *." Alleging that the referee's award was erroneous, the employee charged that, "The record clearly shows abnormal strain and accidental injury arising out of the employment."

At the hearing before the referee, the claimant employee testified to the following effect concerning the occasion of his injury: He and another employee were engaged in unloading boxes of heels from a truck. Such boxes were usually stored on shelves but on the day in question the incoming stock was so voluminous that the shelves were soon filled and it was necessary to begin stacking the boxes on the floor. One row of boxes was stacked on the floor along the edge of the aisle; that row finally became full of the boxes and another row was started parallel with but behind the first row. Holding a stack of six or seven such boxes under the ends—estimated to weigh altogether 35 to 40 pounds—claimant carried the stack to a point where he intended to deposit them behind the first row of boxes. So burdened and with his arms extended somewhat below shoulder level claimant reached over the row of boxes already there and endeavored to set the stack on the floor behind that first row when " * * * my back popped, and I fell. * * * I was just a little ways from the floor with the boxes when my back popped—and I dropped the boxes, spilling the heels." He estimated his distance from the floor at less than one foot. At the moment when the pop was heard claimant felt a very sharp pain in his back; he was immediately drawn to one side and fell forward over the heels.

Claimant's witness Jordan testified that on the day in question he was working with claimant in unloading heels from the truck. He stated that " * * * we had a very narrow passage there and so when I came back and started out, I had to come back where Dan was, and I waited, just a minute, so he could clear the passage so I could walk through—and while I was standing there he had picked up a large box of these heels and when he done that he kind of stumbled and fell almost to his knees or to his knees * * * he turned pale, you might say, and when he grabbed himself begin to complain you know, with his back, holding his back where he had sustained his injury." Asked whether he had heard any unusual noise or sound at this time, the witness didn't recall any. He gave the following testimony on cross-examination:

"Q. When you say stumble, what do you mean?

"A. What do I mean—what I mean, naturally he didn't hold his balance.

"Q. You saw him fall forward?

"A. Well, he fell forward—or whatever position that he might have fallen.

"Q. When you say you saw him stumble—you don't mean you saw him walking forward and he slipped on something—that his foot caught on something and he fell forward?

"A. No, I didn't—he must have done that because * * *.

*   *   *   *   *   *

"Q. The only thing that you really saw was Mr. Withers bending forward and sort of fall to the floor, is that correct?

"A. Yes.

"Q. And you have no way of knowing of your own knowledge whether he felt a pain before or after he fell, do you?

"A. Well, as far as him feeling pain before, I have no way of knowing that."

Claimant's other witness, Matlock, saw claimant pick up a box of heels and turn around with it, but at the time of injury the latter was behind the witness and so out of his vision. Witness heard a noise, " * * * something like somebody thumping a watermellon (sic) or something like that—maybe a little sharper. Then I heard a racket; boxes falling, something being disturbed and I turned around and he was on the floor."

Claimant's description of the physical work regularly engaged in included lifting rolls of material used in the manufacture of shoes, principally leather, running anywhere from 100 pounds upward to an occasional 250 pounds. Upon cross-examination he stated that his job regularly involved considerable stooping, bending, stretching and twisting—stretching, bending and stooping in different positions. "Q. Reaching over your head in different positions? A. Right. Q. Bending down? A. Right. Q. Twisting around? A. It was."

The employer and the insurer offered no evidence relating to the events of the day of the injury. The only testimony on their behalf was that of the medical examiner who testified as to the nature and extent of claimant's injury.

The referee found that the claimant had failed to sustain the burden of proof of an accidental injury; upon review the Commission found that the award of the referee was correct in all respects and supported by competent and substantial evidence.

The original claim for compensation leaves it unclear whether claimant was asserting that his injury resulted from an unusual and abnormal strain or whether it flowed from some other type of unexpected or unforeseen event happening suddenly and violently. His application for review of the referee's award does not clarify the matter for he alleges therein that the award was erroneous because "The record clearly shows abnormal strain and accidental injury arising out of the employment" and then proceeds to recite the substance of Jordan's testimony that he saw claimant stumble and fall. We consider the case from both standpoints but first we note the scope of the Circuit Court's review of a commission award.

■ The statutory command is that, " * * * The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: * * * (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award." § 287.490, RSMo 1959, V.A.M.S.[1] As the Commission has here made no findings of fact other than the ultimate fact of "no accident" the *enumerated* grounds leave only one basis upon which a court could possibly have the authority to reverse, remand or modify an award, namely, that there was

---

1. Grounds 1 and 2, set out in this section, are not here relevant.

not sufficient competent evidence to warrant the award. Implicitly the award could not be reversed if there was sufficient competent evidence to warrant it. Can there be such sufficient evidence if no evidence in support thereof is offered? The award here being a negative one, the inquiry naturally arises: What may be the competent evidence sufficient to justify that award when the party in whose favor the award operates has submitted no evidence upon the issue at all? Can that evidence—sufficient to justify the award—be furnished by the opposite party who simply fails to present appropriate evidence to warrant an affirmative award? Can the statute be satisfied by resort to the usual legalistic rules relating to burden of proof? If so, then the reviewing court has no power to reverse, remand or modify a negative award, if that burden is not sustained.[2] But the question recurs: Is the statutory requirement of insufficient competent evidence tested by the weakness of the case against the award or by the strength of the case made in support of it?

■ The statute gives us in the stated requirement numbered (4), a clear guide in that situation where the Commission enters an award in favor of a claimant. It gives an equally clear guide where the defendant-employer has introduced evidence tending to negate accident and the award is in favor of the employer. Cf. Hinderliter v. Wilson Bros., Mo.App., 412 S.W.2d 558. But here the award is in favor of an employer who has offered no evidence on the issue of accident. What then can be sufficient competent evidence to warrant the negative award?

In this dilemma it is to be noted that the fundamental statutory charge is that the reviewing court " * * * shall review only questions of law * * *." We assume that the circuit court on the appeal followed that mandate of the statute and consequently we assume that upon the basis of a review of the whole record that court found an error of law committed by the Commission. That would mean necessarily that the circuit court found that reasonable men could not reach the conclusion reached by the Commission, that the conclusion was against the overwhelming weight of the evidence and hence that such conclusion was not the product of reasoned consideration of the evidence but rather of inadvertence, inattention or prejudice.

Examining first the question of whether the claimant's injury resulted from a slip of the feet or legs or from a fall, which threw him off balance, we believe that reasonable men could find from the evidence that there was no such slip or fall which caused his injury. The claimant's own testimony shows no slip; it shows no fall occurring prior to the time when his injury was manifested by the pain in his back. The testimony of claimant's witness Matlock is of no value on this point because, although he saw claimant pick up a box and turn with it, at the critical moment the claimant was behind the witness and out of his vision; he heard a noise behind him, which might have been the popping noise testified to by claimant, and when he turned he saw claimant on the floor. Matlock did not witness the intervening events and of course did not testify as to any slip or fall. Claimant's witness Jordan did testify that claimant " * * * kind of stumbled and fell almost to his knees * * * "; on cross-examination he explained his use of "stumbled" by saying that "he didn't hold his balance." He stated that he did not see claimant slip or catch his foot on something prior to the fall—that all that he really saw was claimant " * * * bending forward and sort of fall to the floor". From all the testimony entered on behalf of claimant a reasonable person in the position of the Commission could well find that claimant's injury did not result from a slip or fall or similar event occurring prior to the onset of pain in his back.

2. See Brandt v. E. O. Dorsch Elec. Co., Mo.App., 400 S.W.2d 452, 456.

Turning now to a consideration of the possibility that claimant's injury might have resulted from an abnormal strain, an event which is comprehended within the statutory definition of "accident" (Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401), we see that claimant's original statement of claim alleges that he was in an awkward position. The awkwardness of that position was shown by the fact that claimant was carrying a stack of boxes in his extended arms at something below shoulder level. He was endeavoring to place the stack of boxes on the floor behind a row of boxes in his immediate front and consequently was in a bent position as he reached over that front row. There can be no quarrel with the contention that the position was an awkward one. But awkward position alone does not show abnormal strain. The claimant would have us find that the circumstances of his injury paralleled those found in Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292. Any theory of abnormal strain involves a consideration of the degree of physical exertion. And the very use of the term "abnormal" (usually joined with the tautological "unusual") necessitates a reference to the comparative. In the Merriman case the claimant exerted all his strength in the effort to move the coil of rope and hence his strain was clearly an unusual one. Likewise in Miller v. Lever Bros. Co., Mo.App., 400 S.W.2d 625, the employee was " * * * using all the strength I had * * * "; in Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, the employee's injury followed the application by him of " * * * an extra surge of power * * *." In the present case there is no descriptive evidence of the degree of exertion which was exercised by claimant in carrying and setting down the stack of boxes; much less was there any attempt on his part to relate that degree of exertion to that which was routinely put forth in his daily work. In fact, upon cross-examination, claimant's testimony shows that he was regularly engaged in the unloading of trucks and lifting rolls of leather, that the handling of the rolls was a daily job and that such rolls weighed from 100 pounds upward, occasionally weighing as much as 250 pounds. In addition, his testimony shows that on his job he was routinely engaged in much stooping, bending, stretching and twisting in a variety of positions. In summary it may be said that claimant's testimony shows that he suffered an injury while in an awkward bent position, carrying and placing a relatively light burden while engaged in an operation where his physical maneuverings were like those in which he was routinely involved from day to day.

From all this we believe that reasonable persons in the position of the Commission could reasonably come to the conclusion that claimant's injury did not flow from an abnormal strain. Accordingly there was no error of law on the part of the Commission. Finding no error of law committed by the Commission on either aspect of the case, we find no ground for the circuit court's reversal of the commission award.

Judgment is reversed and the cause remanded to the Circuit Court of Franklin County with directions to enter a new judgment affirming the final award of the Industrial Commission.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this court.

Accordingly, judgment reversed and cause remanded with directions to enter a new judgment affirming the final award of the Industrial Commission.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.