James W. WILSON, Jr., Respondent,

v.

KANSAS CITY, Missouri, Appellant.

No. 25475.

Missouri Court of Appeals,
Kansas City District.

April 3, 1972.

Aaron A. Wilson, City Counselor, Jack R. Reed, Asst. City Counselor, Kansas City, for appellant.

Hines & Magee, L. R. Magee, Kansas City, for respondent.

CROSS, Judge.

This case arose upon plaintiff-claimant's claim for workmen's compensation benefits, asserted on the ground that he had sustained back injuries as a result of an unusual and abnormal strain exerted while planting trees as an employee of defendant Kansas City, Missouri. After a hearing, the referee acting on behalf of the Division of Workmen's Compensation made a temporary award of compensation in claimant's favor. Upon review, the Industrial Commission reversed the referee's award and made a final award denying claimant any compensation. Upon appeal by claimant, the circuit court entered judgment reversing the Industrial Commission's final award and remanding the cause to that body for further proceedings. Defendant-employer has appealed to this court.

Claimant's testimony is the only evidence relative to the incident underlying this controversy. In essential substance it is here stated. As an employee of defendant city at the time in question, claimant worked in the "street tree service". His duties encompassed tree planting, trimming, and removal—"everything pertaining to trees". On March 13, 1968, he was working with a tree service crew planting trees along the street curb in the 2600 block of Victor Street. The crew's equipment included a truck which transported the trees ("weighing anywhere from 100 to 300 pounds") to the various planting sites for placement in holes previously dug by machinery. The truck was equipped with a winch and boom —"a big pole on it which was extended"— to lower a tree from the truck to the ground. A man on the truck would tie a rope around the tree and attach it to the boom with a cable, and the boom would be swung out over the hole that was to receive the tree. At that stage of the operation, claimant's position was on the ground, and it was his function to line the tree up and make sure the rope and burlap were cut off the ball of the tree.

Claimant testified that the accident resulting in his injury occurred when he forcibly "jerked" upon a certain tree that had been lowered off-center and had hung up on the ground at the edge of the planting hole instead of going into the hole as was intended. The tree as described by claimant was twelve or thirteen feet high and approximately three inches in diameter where it joined a ball of dirt wrapped in burlap. The ball of dirt was approximately three feet in diameter. Claimant estimated the total weight of the tree to be 250–300 pounds. As the tree was being lowered in the manner stated, claimant took hold of the cable and jerked it and tried to guide it into the hole, but his effort was unavailing and, as stated, the tree came down off-target and came to rest on the dirt surface at the edge of the hole opposite to the side where claimant was standing. Claimant stated that he then gave the tree a "pretty hard jerk", with both hands but that it didn't move at all,

and that when he did so the tree was on "the fair side of the hole" inasmuch as he was "jerking it toward myself"; that when he took hold of the tree and so jerked it he had both feet flat on the ground and was in a bent-over position. In a written staement given to defendant's investigator (introduced in evidence by defendant) claimant stated, "This tree was heavier than I thought and as I jerked it toward me and the hole, evidently I overstrained myself." As he so jerked the tree he immediately felt a sharp, stabbing pain in his back just below the belt. He continued to "work with" the tree and finally got it in the hole. He finished the morning's work but after dinner had trouble "getting up" and his back was hurting "pretty bad". He told the foreman and fellow workmen he had hurt his back and didn't know whether he "could make it the rest of the day or not", but he finished the day. He was "just barely getting along". He tried to do his share but couldn't do it because his back was hurting and he couldn't bend over. After he went home from work his pain "started to getting to where I couldn't bear it so I went to St. Joseph Hospital." He was admitted there as a patient and remained for treatment three or four days. He was attended, treated and diagnosed by Dr. D. K. Piper, who prescribed surgery as necessary to repair an injured intervertebral disc. Claimant still has a lot of pain in his back. He can't bend over or raise either leg without having pain. He has been able to do little work. Claimant was also examined by Dr. Frank L. Feierabend who testified that he found much clinical evidence of nerve root pressure, that claimant has a protruded intervertebral disc, that he needs hospitalization and myelogram examination, and that he will have to have surgery to recover from his disability. Relative to prior injuries, claimant testified that he had sprained his back ten or twelve years previously and was "off work" a week on that account, but that he had recovered from that incident and did not have any trouble with his back prior to March 13, 1968.

Defendant adduced no direct evidence to contradict claimant's narrative of the occurrence claimed to have caused his injury. The posture assumed by defendant in this case is that no such incident "occurred at all." Defendant's evidence is limited to testimony and matter of record calculated to disparage claimant's credibility and the consequent verity of his account of the event in question.

The Industrial Commission's order denying compensation reads, in pertinent part, as follows:

"* * * The Commission, * * * awards no compensation on the above-captioned claim for the reason that employee has failed to show that the strain incurred on March 13, 1968, was abnormal and that it occurred when the employee's working procedure was deviated from the usual routine. The incident described by employee wherein his back was injured does not constitute an accident within the meaning of the Missouri Workmen's Compensation Act, as he has shown only that the injury, not the strain, was unexpected and unforeseen. Closser v. Fleming Company, 387 S.W.2d 194 (Mo.App.1964)."

The judgment of the circuit court reversing the Industrial Commission's award and remanding the cause for further proceedings is based on the following quoted findings entered of record:

"* * * (T)he court * * * finds that the Industrial Commission's award was not based on a disbelief of the facts of the employee's claim, but rather their ruling was based on a conclusion of law that under the facts of the case the incident described did not constitute an accident under Missouri Workmen's Compensation Act. Having so concluded, the court finds that the final award of the Industrial Commission of Missouri should be reversed."

The ultimate question for this review is whether the Industrial Commission committed error in ruling, as a matter of

law, that "the incident described by employee does not constitute an accident within the meaning of V.A.M.S. Sec. 287.020(2)." That issue comes to this court without any finding by the Industrial Commission relative to the truth or falsity of claimant's evidence, or the existence or non-existence of facts thereby sought to be established. Instead, as the trial court has correctly stated and as clearly appears from the text of the final award, the commission has assumed, but not determined, that facts existed as "described" by claimant, and, on the basis of those assumed facts, concluded as a matter of law that claimant did not suffer a compensable accident. Defendant concedes that the Commission did not determine the matter of claimant's credibility, but now insists there was ample evidence in the record for this court to rule that the Commission was justified in denying compensation on the issue of credibility alone. This we decline to do, since original fact finding is not included as a function in our review of workmen's compensation decisions.

 Inasmuch as the Commission's award was not based upon disbelief of facts testified to by plaintiff, but was based "on an interpretation of the law, or the legal conclusion to be drawn from the evidence, or the application of the law to the facts, this court is not thereby bound." Brotherton v. International Shoe Company, Mo.App., 360 S.W.2d 108; Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61. Furthermore where, as in this case, the claimant's evidence as to the facts and circumstances of the occurrence in question is not disputed, "the award that should be entered by the Industrial Commission becomes a question of law and the Commission's conclusions are not binding on the appellate court." Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292. Also see Corp. v. Joplin Cement Co., Mo.Sup., 337 S.W.2d 252. Hence the Commission's award in this case falls within our province of review and correction. Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61.

In effect, the Commission has concluded and ruled that claimant's evidence (i. e., his "description of the incident wherein his back was injured") does not permit of reasonable inference that he sustained an unusual or abnormal strain and thereby suffered an "accident" as defined by V.A.M. S. Sec. 287.020(2) in this language: "The word 'accident' * * * shall * * * be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." The resulting issue for our consideration is whether the Commission erred in thus ruling that claimant's evidence was legally insufficient to establish his claim.

Disposition of this appeal will be governed by principles first enunciated in Crow v. Missouri Implement Tractor Company, Mo.Sup., 307 S.W.2d 401, and uniformly applied in ensuing decisions, subjected therein however to amplification and clarification. As a departure from prior concepts it was announced in Crow (l. c. 405) that:

> "where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall."

Earlier cases holding to the contrary were specifically overruled.

The Crow case was followed by Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, where an employee undertook to lift a heavy table with his back while in an awkward, bent-over position. Relative to that effort the claimant testified, "the legs was hung. * * * I give a kinda extra surge and when I did I felt something just squash in my back." Ruling that the Commission erred in holding as a matter of law that claimant's injury

was not the result of an accident, the court stated:

"Our interpretation of the Crow case, when it is placed alongside the Blair case (State ex rel. United Transports, Inc. v. Blair, (en banc), 352 Mo. 1091, 180 S.W.2d 737) is that where an employee suffers an unexpected and abnormal strain (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury which is not the result of orderly natural causes, the injury is an accident within the meaning of sec. 287.020(2). *The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated. This is true even though the force which caused the abnormal strain comes entirely from the physical exertion rather than from sources external to the body."* (Italics ours.)

In Brotherton v. International Shoe Company, Mo.App., 360 S.W.2d 108, the claimant was attempting to unlock an industrial machine, using a long pipe wrench extended by a pipe over the handle for additional leverage. While bouncing up and down on that contrivance his foot slipped and he hurt his back. The commission concluded "no accident" and denied compensation. Basing its decision not on the concurrence of muscular exertion and slipping, but on the fact of claimant's abnormal and unusual strain, the court held he had sustained a compensable accident. The court significantly stated:

"We now conclude that the *unexpected and abnormal strain* is the important event. This will *usually* result from the doing of the work in an 'abnormal manner' or in doing work which is not routine, but it is not necessarily so."

The factual aspects of the instant case are strikingly paralleled in Merriman v. Ben Gutman Truck Service Inc., Mo.Sup., 392 S.W.2d 292, where a truck driver injured his back lifting a heavy coil of rope while his body was extended forward, out of a normal, usual lifting position. His back and legs were to the rear of his lifting center instead of in support of it and consequently he could lift only with his arms and shoulders. While exerting his full strength in that position he experienced a sudden, sharp pain in the small of his back and suffered disabling injury. The court held that under those conditions "the strain was thus abnormal; was unexpected in that it was more strain than claimant anticipated he would exert, and hence was an accident within the meaning of Section 287.020(2)." Other cases holding that an abnormal strain can result from lifting heavy objects or material, while in an awkward, abnormal or unbalanced lifting position, include Davies v. Carter Carburetor, Mo.Sup., 429 S.W.2d 738, and cases cited; also Sita v. Falstaff Brewing Corp., Mo.App., 425 S.W.2d 487.

Defendant city's attack upon the sufficiency of claimant's evidence to establish that the occurrence therein described was not an accident is thus summarized in his sole point thereto directed: "Respondent did not prove that the alleged strain was abnormal and that it occurred when his working procedure had deviated from the usual routine."

We recognize that claimant had the incumbent burden to establish that he sustained an unexpected and abnormal strain as a result of physical effort exerted in excess of that normally required in the performance of his routine duties. However, in resolving whether that burden was satisfied, it is not important that claimant may be said to have been engaged *generally* in his routine occupational duties incident to the planting of trees at the time in question, and in that sense was not engaged in an *abnormal* activity. We are in agreement with the Springfield Court of Appeals when it states in Brotherton v. International Shoe Company, 360 S.W.2d 108: "The Crow case does not *hold* that the employee

must be engaged in an 'abnormal' activity. * * * An examination of the cases cited by the Crow case in support of the general rule [307 S.W.2d] at loc. cit. 404–405 reveals that a majority of them were cases in which the employee sustained an 'abnormal strain' while engaged in pursuit of his routine duties."

The acutely critical question is whether the strain (meaning the application of effort or force) which injured claimant was in excess of that which he anticipated he would exert. Such is our view of the essential criterion of whether an abnormal strain resulted, under the doctrine promulgated by Crow. See Williams v. Anderson Air Activities, Inc., supra, Merriman v. Ben Gutman, supra. In determining that question, proof that claimant was "doing something beyond and different from his normal routine" in the application of his strength would be strongly persuasive that the resulting strain was unexpected in that it was more than he intended and consequently abnormal. That proof is readily extracted from the record of claimant's testimony by comparing his routine duties with his activity and effort exerted at the time of the specific incident described. This, because "any theory of abnormal strain necessarily involves a consideration of the degree of physical exertion." Withers v. Midwest Footwear, Inc., Mo.App., 421 S.W.2d 800, 804.

It is apparent from claimant's evidence that his *normal* role in the tree planting operation did not involve lifting the total, dead weight of the tree(s). The apparency derives from the very fact that machinery and power were furnished for that purpose (certainly a well-conceived method for bearing weights up to 300 pounds). Claimant's only assigned duty (other than removing the burlap from the tree ball) was to "line the trees up", a function performed by standing on the ground next to the hole, waiting for the cable-suspended tree "to swing around the side of the truck so I could get ahold of it (or the cable) and guide it to the hole in the ground."

Claimant's *abnormal* activity beyond and different from his normal routine arose by reason of the boom operator's error in lowering the tree onto the ground surface instead of in the hole (despite claimant's efforts to guide it into the hole by jerking on the cable as it descended). Whether or not the boom operator should have retracted the tree and repeated the process correctly is not before us. Claimant assumed the burden the machine had abandoned and became the power source to dislodge and lower a two hundred fifty-three hundred pound tree by body strength alone. That kind of effort certainly entails "doing something beyond and different from his normal routine" and constitutes an abnormal activity, as contrasted with his usual, normal routine guidance of the tree by merely pulling on the cable that supported it as it was lowered into the hole by motive power.

Was the strain thus exerted abnormal and unexpected? The nature and manner of claimant's exertions after the tree hung up bear great weight on that question, and favor an affirmative answer. A highly persuasive factor in the determination is the disadvantageous physical posture of claimant when he gave the final jerk to move the tree. As in the case of the claimant in Merriman v. Ben Gutman Truck Service, Inc., supra, claimant here was in "an extended position with his body which placed him completely out of a normal, usual or routine lifting position"—at least with respect to the massive weight here concerned. Standing on one side of the hole, he had to reach across its width (assumably to a distance of at least two and one-half to three feet) in order to pull or "jerk" the tree. Thus positioned with his feet and legs behind his lifting center instead of resting under it as a fulcrum or supporting base, his pull or jerk of the tree was necessarily with his shoulders, arms and back. Unwilling to disregard well-known physical facts, we believe it to be within common knowledge that moving heavy weight while in the described posi-

tion imposes unusual burden and strain on the skeletal structure of the back, with attending potential of its injury. In claimant's instance, it is palpably clear from his evidence that such was the case.

The claimant described his effort to move the tree from off the ground into the hole as "a great big jerk" which failed to move the tree because "it caught on the side", and "hung up on the dirt". He gave it a "pretty hard jerk". When he "jerked on the cable" he felt a "sharp, stabbing pain" in his lower back. Claimant's written statement voluntarily introduced in evidence by the city, furnishes additional substantial evidence, of especial probative value, that his strain was both abnormal and unexpected. We refer to the previously quoted excerpt wherein claimant said, "This tree was heavier than I thought and as I jerked it toward me and the hole, evidently I overstrained myself." In the first place, that evidence establishes the degree of stress and effort exerted by claimant. The word "overstrain" is one of common meaning. As a verb, its definition by Webster's New International Dictionary 2nd Edition (Merriam) is "strain to excess". The 3rd Edition of the same lexicon defines "overstrain" as "To subject to excessive strain; to load until the stress exceeds the elastic limit—to subject oneself to excessive strain." Certainly, the word bears no connotation of "normal", "usual" or "routine". Secondly, claimant's assertion that "the tree was heavier than I thought", understood in context with his statement that he "overstrained himself" establishes that he exerted more strength than he had anticipated was necessary.

From all the evidence we have reviewed touching the question, it must be concluded, as stated in Merriman v. Ben Gutman Truck Service, Inc., supra, "The strain was thus abnormal; was unexpected in that it was more strain than claimant anticipated he would exert, and hence was an accident." Therefore, the Commission erred in its conclusion of law to the contrary.

It appears from the text of the Commission's order that its conclusion of law was based upon only one cited authority, the decision of this court in Closser v. Fleming Company, Mo.App., 387 S.W.2d 194. Respondent city also relies upon Closser v. Fleming Company, supra, and additionally cites Flippin v. First National Bank of Joplin, Mo.App., 372 S.W.2d 273, but fails to demonstrate applicability of either case to the facts of this case. In Closser there was no evidence of slipping, loss of balance or added exertion. The claimant admitted that the work he was doing when injured was performed as he planned and that he exerted the same amount of strength he had on other occasions. He testified: "Q. And the only difference between this time and all the other times was that this time you felt the pain in your back, is that correct? A. Yes."

In the Flippin case, an employee's death from a heart attack after shoveling snow from an extensive sidewalk area was held not accidental. The court held there was no basis for concluding that the employee was subjected to any unusual or abnormal strain, since there was no evidence of any sort to show the manner of claimant's work on the occasion preceding his death.

The judgment of the circuit court reversing and remanding the cause for further proceedings is hereby affirmed.

SHANGLER, C. J., and DIXON, J., concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of court at the time the case was submitted.