WILLIAM H. KOPP, RESPONDENT, v. LOUISE McGREW MOFFETT, AP-PELLANT.—167 S. W. (2d) 87.

Kansas City Court of Appeals.   December 14, 1942.

376

A. E. Watson and Martin J. O'Donnell for appellant.

*Glen A. Wisdom* for respondent.

SPERRY, C.—William H. Kopp, plaintiff, sued Louise McGrew Moffett, defendant, and Louise McGrew Moffett, executrix of the estate of T. S. Moffett, deceased, for services claimed to have been rendered by plaintiff as an accountant in auditing the books and filing income tax returns in connection with the estate of defendant's deceased husband, T. S. Moffett. In a second amended petition, upon which trial was joined, Louise McGrew Moffett, alone, as an individual, was sued. Judgment was for plaintiff in the amount of $1125.20, which includes interest. Defendant has appealed.

T. S. Moffett died December 22, 1930. Deceased was at the time of his death, interested in the following partnership firms: Moffett Brothers in Kansas, Moffett Brothers in Missouri, Moffett Brothers & Andrews, Moffett Bros., Cattle and Lumber Company, and Andrews, Moffett & Lewis and also in Moffett Bros. & Andrews Commission Company, Incorporated. He was also, at that time, administering the estate of Moffett Brothers, a partnership in which deceased had been a partner with his deceased brother, John Moffett.

At the time of his death deceased was an active partner in the firm of Andrews, Moffett & Lewis, and after his death the books of that firm, as well as deceased's own private books, were kept in his former office but the Commerce Trust Company had charged of the books of Moffett Brothers Estate, Moffett Brothers & Andrews, Moffett Brothers Cattle Land and Lumber Company, and Moffett Brothers & Andrews Commission Company, a corporation. Prior to the death of John Moffett, a brother of deceased, the books of all of these firms were kept in deceased's office in the Livestock Exchange Building in Kansas City, Missouri. Defendant, for many years prior to February 17, 1931, had been chief bookkeeper and in charge of the books of Thomas Moffett and of Andrews, Moffett & Lewis, and of other business firms in which T. S. Moffett was interested. After the death of T. S. Moffett defendant, who was the executrix of the estate and the sole legatee under the will, had in charge only the books of deceased and the books of the former partnership of Andrews, Moffett & Lewis; but as to the latter firm she had charge of the books that related to transactions prior to her husband's death only, the books from that date forward being in charge of and kept by Mr. Andrews, a surviving partner.

There was evidence tending to prove that in 1925 plaintiff was engaged by T. S. Moffett, and others of the partnership, to audit the books of the various firms and to file Federal and State income tax returns therefor; that it was then agreed between plaintiff and deceased, and others interested, that plaintiff's remuneration for such services would be $25 per day, and that a "day" was to consist of seven hours of work; that defendant was then employed in said office as a bookkeeper and knew of this agreement; that plaintiff. in 1925, made an audit of the books and instructed defendant and others of the office force in the installation of a bookkeeping system which was still in effect at the time of the trial; that in 1926 and 1927 plaintiff audited the books above mentioned, assisted in filing income tax returns thereon, and was paid at the above mentioned rates; that each year after the first he would merely call the office by telephone to find out when it would be convenient to his clients to do said work, and then would go down and do the work, he being paid therefor on the terms above mentioned; that in 1928 plaintiff took one C. A. Pearson, an accountant and an employee of plaintiff, to the Moffett offices, introduced him to defendant and others in charge, and arranged for Pearson to thereafter do said auditing and income tax work, under plaintiff's supervision, upon the terms and conditions which had, theretofore, prevailed; that Pearson did said work in 1928, 1929 and 1930; that the custom was, in the years of 1929 and 1930, sometime after January 1, Pearson would call defendant by telephone, would ask when the books would be ready for him to audit and make out income tax reports, and defendant would tell him when

the books would be ready; that Pearson would then go down and do the work and plaintiff was paid for such work done in 1929 and 1930, according to above mentioned arrangements, and at above mentioned rates; that prior to February 17, 1931, Pearson called defendant, in the same manner as had been his custom in previous years, and asked when the books would be ready to audit and to make out income tax returns; and that he called twice without being able to complete arrangements, because of some reason, but on the third call defendant informed him that the books were ready for him to go to work on. The procedure followed at this time was identical with that followed in 1929 and 1930.

Pearson testified that nothing was said in this telephone conversation about rates of pay; that he went to the Moffett office, pursuant to arrangements so made with defendant, and there talked with defendant and was given access to the books; that defendant did not tell him to do anything different from the way it had been done in previous years, and did not give him any additional instructions; that he audited the books of T. S. Moffett, deceased, and of Andrews, Moffett & Lewis; that he also made out and filed income tax returns thereon; that he dictated letters to the United States Internal Revenue Department, and to the State Auditor, requesting two different extensions of time for filing said reports, all of which letters were signed by defendant; that he personally filed said income tax returns; that he spent a total of 142 hours in said work. He testified that the books of T. S. Moffett and of Andrews, Moffett & Lewis were in the office of which defendant had charge; that defendant did not tell him that she could not afford to pay for auditing the books at that time and did not tell him to limit his work to making out income tax returns alone; that all of the work he did was necessary to be done in order to properly make out and file income tax returns for the estate of T. S. Moffett, deceased; and that he knew said work was being done so that defendant, as executrix of the estate of T. S. Moffett, deceased, could file income tax returns.

Plaintiff, in his testimony, corroborated Pearson. He also testified that he, personally, worked a total of 67 hours on this job, 9 hours of which was performed during the month of June, 1931; that the total hours worked by Pearson and plaintiff was 133 hours, or 19 days, on T. S. Moffett estate books, and 76 hours, or 10 6/7 days on Andrews, Moffett & Lewis books; that he billed defendant for 23 days only, or for the sum of $575, and arbitrarily credited her for the balance of the time worked, but that said credit was without consideration; and that he claims in this suit $746.42, the full amount due him. He identified a bill which was introduced in evidence, and which, he said, he mailed to defendant under date of June 29, 1931, together with a letter written to her on said date, asking payment; and he testified that he, thereafter, personally requested pay-

ment and was ordered out of the office, and that no payment had ever been made on said account. He testified that he had, in previous years, been paid at the rate òf $25 per day for services rendered in connection with the Moffett books and income taxes; that he had been paid for all work done on books and income taxe returns during the year 1931, in connection with the books of such firms as were hereinabove named as being in charge of Commerce Trust Company, who was administering said estate and businesses, but was paid by persons other than defendant; that he had not been paid $25 due for work done in 1931 in connection with auditing work and income tax returns for Moffett Brothers and Andrews Commission Company, a corporation, but that he made no claim therefor from defendant; that all work for which remuneration is here claimed was necessary to be done in order to file correct income tax returns for the T. S. Moffett estate.

Defendant testified in her own behalf to the effect that plaintiff and Pearson had audited the books in years previous to 1931, substantially as they had testified, and under about the same conditions and agreements as they stated; that Pearson called by telephone, in February, 1931, and asked about the books and that she told him they were ready; but she stated that when Pearson came to the office she told him that she could not afford to pay for *auditing* this year, and that she had nothing to do with the books of Andrews, Moffett & Lewis and that he, Pearson, would have to arrange with Andrews about that. She testified that Pearson could not have spent as much time on the work as is claimed by plaintiff; that he did not need to "close" the books in order to make income tax returns because she had them closed when he came. Pearson flatly contradicted this testimony. She admitted that Pearson did substantially the same work in 1931 as that which he had done in previous years. She, at first, denied that the books of Andrews, Moffett & Lewis, were in the office, but she latter admitted that they were. She denied that she had ever seen plaintiff, to talk to him about this claim, from the time she received the bills therefor until in November, 1936, "just before the filing of this suit;" but it was shown that this suit was instituted June 4, 1936. She admitted that she had previously testified that she saw and talked with plaintiff about the claim in 1931, but said she was mistaken, to the extent of five years, in that testimony. She denied that she needed assistance in making and filing income tax returns in 1931, but she admitted that she signed two letters requesting extension of time for said filing and it was stated in said letters that Pearson was working on the books and preparing said returns; and she testified that Pearson personally filed said return. She testified that it was not necessary to audit the books of Andrews, Moffett & Lewis in order to make out and file an income tax return on the T. S. Moffett estate, which was all that she said she was interested in; but Pearson and Kopp testified that a correct return could not be

made without reference to the books of the various other concerns herein mentioned; and defendant admitted that all returns fild by her since 1931 were in error because she had not included therein any report from the other concerns. Under this state of the record it was for the jury to weigh the evidence. They have seen fit to accept as true that of plaintiff and Pearson and to reject as untrue, that of defendant which is contradictory thereof. By the jury's verdict we are bound, so far as the facts in the case are concerned.

Defendant urges as error the action of the trial court in overruling her plea to the jurisdiction for the alleged reason that the petition states on its face that the work was done for defendant in her capacity as executrix of the estate of T. S. Moffett, deceased, and that same was ordered by her without authority of a court order, without statutory authority, and without authority contained in the will; and that said work was done solely to aid her, as executrix of said estate, in filing income tax returns which she was required by law to file. She contends that, in view of the above alleged and proven facts, the probate court alone had jurisdiction to hear and determine this claim.

The allegations of the petition in that respect are as follows:

"Plaintiff states that at the special instance and request of defendant he performed services in making an audit of the books, records and accounts of the estate of Thomas S. Moffett, deceased, and the partnership estate of Andrews, Lewis & Moffett, of which said Thomas S. Moffett during his lifetime was a member, for the purpose of making tax returns in the estate of Thomas S. Moffett, deceased, and to ascertain accurately the correct amount of tax due by the estate of Thomas S. Moffett.

"Plaintiff states that he was employed by defendant to do said work at the reasonable value thereof and in so employing plaintiff Louise McGrew Moffett, executrix, acted without authority of law, without authority of the will of said Thomas S. Moffett, deceased, and without order of the said Probate Court."

In the case of Yeakle v. Priest, 61 Mo. App. 41, the suit was by an accountant against the administrator in his representative capacity, and plaintiff sought to have the assets of the estate charged. The court, in its opinion written by Bond, J., quotes with approval the following from Taylor v. Davis, 110 U. S. l. c. 335: "When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee." The two remaining members of the court, in a separate concurring opinion, declared that the administrator had power to bind the estate *whenever authorized by statute*, and no further; that part of the services there rendered were for the benefit of certain heirs, and not for the estate; that the residue of such services "were of an accountant in aiding the administrator to prepare his annual settlements;" that for the latter

the administrator receives his administrator's fees; and that the contract of the administrator in neither case could bind the assets of the estate.

In Richardson v. Palmer, Administrator, 24 Mo. App. 480, l. c. 488, in an opinion prepared by PHILLIPS, J., this court held that an administrator has no principal back of him and cannot bind the estate except as to matters connected with the execution of his trust, and quotes with approval from Sumner v. Williams, 8 Mass. 199. . . . and it seems to be clearly understood by the decisions which have been delivered, that his contracts in the course of his administration, or for the debts of his estate, render him liable *de bonis propriis.*'' The phrase "*de bonis propriis*" is defined as follows: "Of his own goods. The technical name of a judgment against an administrator or executor to be satisfied out of his own property and not from the estate of the deceased. . . . '' [Black's Law Dictionary (Third Ed.), page 509.] This court, in the above cited case, approved the doctrine that an administrator may contract so as to bind himself although his contract might not be binding upon the assets of the estate.

In the case of Dooley v. Welch, 172 Mo. App. 528, l. c. 534, this court, speaking through JOHNSON, J., approved the doctrine laid down in Nichols v. Rayburn, 55 Mo. App. 1, l. c. 5, which was to the effect that both the administrator, personally, and the estate, may become liable on an administrator's contract, the administrator to the full extent of the contract and the estate to the extent that it benefited thereby. The rule is said to be well settled that executory contracts made between an executor as promisor and another are the personal contracts of the executor and he is personally liable thereon unless it is clearly stated in the contract that the promisee will look exclusively to the estate for payment. [21 Am. Jur. 499.] "The personal representative and not the estate is as a rule directly liable to one whom he employs incidentally in the discharge of his trust, as for selling, custody of, or suitable work upon the assets, or clerical or other services in managing the property and the like." [24 C. J. 65.]

From the above authorities, and others, we think defendant might be liable, personally, for the work which plaintiff did. However, defendant contends that this is, properly, a claim for expense of administration and, as such, no court other than probate court has jurisdiction thereof. In support thereof she cites Stephens v. Cassity, 104 Mo. App. 210; Hewitt v. Duncan, 226 Mo. App. 254, and other cases. Such contention ignores the fact that this claim is not made against the estate but is asserted in circuit court against an individual who is charged with having contracted for the services. In defendant's cited cases the object sought was to establish a claim or lien against the assets of an estate; and the suits were all directed at executors and administrators in their representative capacity. The courts have held, in those and similar cases, that claims against *estates*

for costs of administration, such as attorney fees and printing briefs and abstracts in connection with litigation growing out of the estate, must be asserted in probate court alone. We have found no decision which holds that an administrator may not be held in his individual character, in an action in circuit court, on contracts made by him such as the one before us. We hold that an administrator or executor may be so held and may be sued in circuit court.

Defendant contends that the court erred in not holding that plaintiff's alleged cause of action was barred by the five-year Statute of Limitations, and that her offered demurrer to the evidence should hav been sustained on that ground.

In the second count of the petition plaintiff seeks recovery for services rendered as follows:

1931

| | | |
|---|---|---|
| February | 55½ | hours |
| March | 36 | hours |
| April | 63½ | hours |
| May | 45 | hours |
| June | 9 | hours |

Answering this count of the petition, defendant, generally and specifically, denied all allegations therein contained and, in addition thereto, alleged: "Defendant states that said alleged cause of action is barred by the five-year Statute of Limitations. . . . Said alleged cause of action, if any, accrued on or before May 15, 1931, and action was not begun until June 4, 1936."

This is an affirmative defense and must be pleaded in order for defendant to rely thereon. The burden was upon defendant to prove the pleaded defense. [Johnston v. Regan, 265 Mo. 420, l..c. 447.] Plaintiff's evidence tended to prove that the last work done was sometime during the month of June, 1931, prior to June 29, 1931. The evidence in support of the pleaded defense certainly was not conclusive. This point, therefore, must be ruled against defendant. At most it was a question for the jury.

Defendant . . . condemns the instruction (No. 1) on the ground that whereas it purports to cover the entire case and directs a verdict, it fails to mention the pleaded defense of the Statute of Limitations. This defense is submitted in defendant's Instruction 16. The criticism is not justified. [State ex rel. Robinson v. Hope, 102 Mo. 410, l. c. 426; Reigel v. Loose-Wiles Biscuit Company, 169 Mo. App. 513, l. c. 517.]

Defendant complains of the action of the trial court in modifying her Instruction 14, as offered, and in giving it as modified. What we have heretofore said disposes of this point, which must be ruled against defendant.

Defendant contends that when the trial court sustained a motion to strike the first amended petition and thereafter plaintiff filed a

motion to vacate said order to strike, which said motion was over-ruled, that this constituted a final adjudication of the issues tendered by the motion, *and that plaintiff might not, thereafter, file a second amended petition.* She cites, in support of her position, Reilly v. Russell, 39 Mo. 152; State ex rel. v. Buckner, 207 Mo. App. 48, l. c. 53, and Johnson v. Latta, 84 Mo. 139, l. c. 142. We think the decisions above mentioned do not support defendant's contention. The motion was merely a move in connection with the pleadings and it cannot be said that a ruling thereon is in the nature of a judgment on the pleadings.

## ON REHEARING.

BLAND, J.—Upon a further consideration of this case, including the additional briefs filed by the parties, we have arrived at the conclusion that the foregoing parts of the opinion written by SPERRY, Commissioner, upon the original submission of the case, properly state the facts and declare the law relative to that part of the case covered therein, and said parts of the opinion are hereby adopted by the court. It is necessary, however, to cover certain other points not mentioned in the parts of the opinion by SPERRY, Commissioner.

We are of the opinion that the court erred in giving its Instruction No. 1, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence that defendant impliedly employed plaintiff to audit the books, records and accounts of the estate of Thomas S. Moffett, deceased, and the partnership estate of Andrews, Lewis and Moffett, and if you further find that defendant agreed impliedly to pay plaintiff at the rate of Twenty-five Dollars per day, if so, and if you further find that plaintiff entered upon said work and completed the same, if so, personally or by an agent, if any, then your verdict must be for the plaintiff, and you may assess his recovery, if any, at the contract rate, if any, of Twenty-five Dollars per day, if so, multiplied by the number of days, if any, put in by plaintiff, if so, in the performance of said contract, if any. You are further instructed that the term 'day' as used in this instruction means seven working hours. To the sum so computed, if any, you may, in our discretion add interest at the rate of six per cent per annum from June 29, 1931."

The amended petition, upon which the cause was tried, alleges that plaintiff, at the special instance and request of the defendant, performed the services in controversy; that he was employed by the defendant to do the work at the reasonable value thereof; that the reasonable value of the services is at the rate of Twenty-five Dollars per day; that he worked a total of 29 6/7 days and the reasonable value of the services is $746.42, for which he prays judgment.

The petition is clearly founded on *quantum meruit.* [McCartney v. Guardian Trust Co., 202 S. W. 1131, 1136; Macke v. Harris et al.,

27 S. W. (2d) 1079; 5 Houts, Missouri Pleading and Practice, p. 427, sec. 2025.] The court, in the instruction, evidently intended to submit the case to the jury upon the theory of implied contract. We are not called upon to say whether there never may be an implied contract to pay for services at the rate of so many dollars per day but we do hold that this case was not submitted to the jury upon the theory pleaded in the petition, *quantum meruit*. In the first place an action of that kind, strictly speaking, is not on the contract at all, but the contract merely is offered in evidence to sustain plaintiff's case, and as proof of his compliance with its terms. [5 C. J., p. 1387; Oaks v. Short, 292 S. W. 738, 740; Macke v. Harris et al., *supra*, l. c. 1080.] Defendant, at the trial, neither expressly, nor by conduct, admitted that Twenty-five Dollars per day was a reasonable charge for the services claimed to have been rendered by plaintiff nor was the jury required to find, in the instruction, such a sum to be reasonable. The court should have left to the jury the question as to what would have been a reasonable compensation without mentioning, in the instruction, any sum in that connection. [28 R. C. L., p. 675.] It is always error to submit a different contract to the jury than the one pleaded. [Macke v. Harris et al., *supra*; McCormick v. Fidelity & Guar. Co., 114 Mo. App. 460; Wade v. Nelson, 119 Mo. App. 278; Wakefield et al. v. Dinger et al., 130 S. W. (2d) 490.] The instruction is also erroneous in that it instructs the jury that the term "day" means seven working hours. There was oral testimony on the part of plaintiff to this effect but such testimony was not conceded to be true by the defendant at the trial. [Gannon v. Laclede Gas Light Co.; 145 Mo. 502.]

The judgment is reversed and the cause remanded. All concur.