Lucille SMITH, Employee, Appellant,

v.

CASCADE LAUNDRY COMPANY, Employer, and Liberty Mutual Insurance Company, Insurer, Respondents.

No. 23098.

Kansas City Court of Appeals.

Missouri.

May 9, 1960.

D. Robert Schollars, Dubiner & Gregg, Kansas City, for appellant.

A. Warren Francis, Lloyd A. Hamrick, Kansas City, for respondents.

MAUGHMER, Commissioner.

Appellant Lucille Smith's claim for benefits under the Missouri Workmen's Compensation Act was denied by the Referee, by the Industrial Commission and. by the Circuit Court. She has properly perfected an appeal.

It was admitted that on May 8, 1957, the claimant was an employee of the respondent Cascade Laundry Company; that on said date the company was an employer, operating under the provisions of the Missouri Workmen's Compensation Law and was fully insured under said law by respondent Liberty Mutual Insurance Company.

Claimant stated that on May 6, 1957, when she started working for respondent company she was in good health and had full use of her right arm; that two days later on May 8, she was assigned to work on curtains—ironing and pressing. She said that in the performance of this task it was required and necessary "to dampen the curtains and keep them damp at all times", by application of a "sour solution". Claimant's use of the solution necessitated the immersion of her hand in it from time to time. It was her testimony that after engaging in this work for an hour or more her hands—especially the right hand—began to burn—then the hand started to get red and became swollen up to the wrist. She continued to work until noon, then went to the rest room and ran cold water over her hand; later on that same day she went to an emergency hospital where a doctor put some ointment on the injured member and bandaged it. That evening her husband procured ointment at a drug store for her. She used this medicine, but the burning continued. Two days later Mrs. Smith went to a company physician,

Dr. James E. Ball, who, she said, gave her more ointment, an allergy pill and a nerve pill. She visited Dr. Ball occasionally over a two week period. She saw Dr. Harry R. Staley twice, has taken aspirin since the occurrence and at times uses a hot water bottle when the arm goes to sleep. She says the strength in her right hand and arm has lessened and at times she is unable to pick up articles.

Dr. Dewey K. Ziegler, who qualified as a specialist in neurology and psychiatry, testified on behalf of claimant. He examined her on February 11, 1958, and concluded, based upon both objective and subjective findings, that she had an "impaired function of the use of the right arm because of an anxiety-hysteria type of neurosis, a mixed psychoneurosis with anxiety-hysteria elements, which gives her a weakness of the arm, interferes with her full function of the arm to the degree of 20 per cent". He thought the disability was permanent and traced its origin to the incident at the laundry. He named the condition "shoulder-hand syndrome". He said it might arise from actual shoulder injury, after heart attacks or when the patient focuses attention on the arm. He diagnosed the case as "neurosis with anxiety and hysteria elements". He found no muscle atrophy.

Dr. Harry R. Staley, called by defendants, was qualified as a dermatologist. He examined claimant on May 28, 1957, and again on January 8, 1958, but found no evidence of present or past injury to the skin or to the right hand or arm. He found excessive sweating of the hand and arm, which he believed was of nervous origin. He gave it as his opinion that alkalines and fluorides, as used by the laundry industry, were not harmful to the hands. He declared further even if there was a first degree burn, manifested by redness, it could not in the absence of infection, involve either nerve or muscle because the portal of entry would not be opened up.

James L. Martin, president of the Cascade Laundry Company, said he was familiar with the solution called "sour"; that it is used to neutralize alkali and eliminate yellowness in the laundered cloths. He said that on May 8, 1957, the company was using a sour solution sold under the brand name "Erusto Salts". Mr. Martin stated that Mrs. Smith came to him on May 8; that she complained of and he saw a rash on her hand. He could not state the chemical analysis of Erusto Salts but said it was an acid, a neutralizer—was not injurious and the employees could use whatever amount was deemed advisable.

The evidence revealed that in 1942, Mrs. Smith had an infection on both her hands. She called it "Athletes' Hand" and received medical attention for the condition. As it was developed under the testimony, Mrs. Smith, during her lifetime, had three employment periods—three days at Cascade—an employment in Colorado, and one in Washington, each of less than one month's duration. The transcript does not reveal her exact age, but reference to the menopause in connection therewith indicates she is approaching fifty years.

At the hearing plaintiff's counsel asserted the claim for compensation was predicated upon an alleged accident and not upon occupational disease. The award of the referee denied compensation and found (a) claimant failed to establish that she sustained an accident arising out of and in the course of her employment within the meaning of the Act and (b) failed to establish that the solution used by her was harmful in and of itself so as to cause the injury complained of. Upon application for review the Industrial Commission of Missouri unanimously denied compensation and found (1) Claimant has failed to prove that she sustained an accident; (2) failed to prove the alleged accident was the producing cause of the condition complained of; (3) failed to prove that the "sour" solution used by her was harmful or deleterious in and of itself so as to

cause or contribute to the injury complained of.' The Circuit Court found that the award of the Commission was "sustained by competent evidence" and affirmed it.

Upon appeal we must decide if the Circuit Court erred. In reviewing the award of the Industrial Commission an appellate court must view the evidence in a light most favorable to the prevailing party. We may not substitute our judgment on the evidence for the judgment of the Commission. On appeal the Circuit Court and this court are required to determine if the Commission could reasonably have made the findings and award it did make under the evidence adduced and ultimately if the final award is supported by competent and substantial evidence. Long v. Mississippi Lime Co. of Mo. et al., Mo.App., 257 S.W.2d 167, 170; Adams v. Koss Construction Co. et al., Mo.App., 311 S.W.2d 66, 67; Vollmar v. Board of Jewish Education, et al., Mo., 287 S.W.2d 868, 871; Daniels, et al. v. H. W. Kroeger, et al., Mo. App., 294 S.W.2d 562, 565.

On this appeal claimant contends the evidence shows the "sour" solution was harmful and deleterious; that the alleged injury was the result of an accident, and that her anxiety-hysteria type of neurosis was a direct result thereof. Are the opposite conclusions reached by the Commission supported by competent and substantial evidence?

There was competent, substantial and practically uncontradicted evidence that Erusto Salts, the brand name of the "sour" solution used is of a·kind and type widely used by the laundry industry and in private homes as a neutralizer and is not harmful or deleterious in and of itself. It had been used for many years by respondent's other employees with no showing of injurious results. Although claimant does not urge that· her disability resulted from an occupational disease, she·does claim the "sour" solution was, in·and of·itself, harmful or deleterious, and the Commission. found it was not. In Sanford v. Valier-

Spies Milling Co. et al., Mo.App., 235 S.W. 2d 92, 95, the employee was alleregic to wheat dust. He had an asthmatic condition of long standing. This pre-existing sensibility to dust superimposed for years upon his asthmatic condition, developed emphysema and worsened the asthma. One doctor expressed the opinion—"It was him and not his occupation"—that "Fifteen hundred men might work in the same place he was and nothing would happen". The opinion states:

"Our act neither defines an occupational disease, nor does it designate any specific diseases as being occupational in character. In this situation the term is to be regarded as having been employed in its ordinary and customary sense, that is, as referring to a disease which is the natural incident or· result of a particular employment and is peculiar to it, usually developing gradually from the effects of long continued work at the employment, and·serving, because of its known relation to the employment, to attach to the employment a risk or hazard which distinguishes it from the ordinary run of occupations and is in excess of that attending employments in general. * * *

" * * * For a condition to amount to an occupational disease, it must be due to causes and conditions inherent in and characteristic of the particular employment, and it is not enough to show a right to compensation where it appears that the disease would not have been contracted except for the peculiar susceptibility of the individual worker". These declarations of law were lately approved by the Supreme Court in Marie v. Standard Steel Works, et al., 319 S.W.2d 871, 875. Mrs. Smith's condition certainly did not result from "long continued work at the employment". Her total employment by respondent lasted three days. She had used this sour solution only one half day.

Neither, as we understand it, does appellant assert·there·is any apparent or lasting physical injury to her hand or arm. It is

her position rather that use of the sour solution reddened and caused pain to her hand and arm which, in turn, activated or brought into being the anxiety-neurosis, which Dr. Ziegler, her only medical witness, described and which apparently constitutes her present disability.

Claimant insists that the occurrence here is an "accident" under the Workmen's Compensation Act. Section 287.020, subd. 2 V.A.M.S. provides: "The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury".

On the accident feature our attention is invited, among others, to the following cases: Smith v. General Motors Corporation, et al., Mo., 189 S.W.2d 259, 263, 264. Therein the court said: "It is the view of this court that where injury (or death) is due to the necessary and customary physical exertion incident to the normal duties of the workman, such a cause of the injury is not an 'accident' within the meaning of the Workmen's Compensation Law".

Thompson v. Railway Express Agency, Mo.App., 236 S.W.2d 36, in which case claimant's evidence showed a psychoneurosis following a series of what were concededly, accidents. An award of compensation was reversed and the cause remanded because the causal connection had not been firmly established.

Lastly, Crow v. Missouri Implement Tractor Co. et al., Mo., 307 S.W.2d 401, 405. The opinion in this case is by our Supreme Court en Banc. The employee there suffered an abnormal strain while supporting a corn picker elevator while fellow employees disconnected or disengaged its supporting mechanism. He did not slip or fall as some students had believed was essential to establish an accident under the compensation laws. However, he was not performing his usual duties in the usual way, but was engaged in a task which did not recur regularly. On this question the court said: "We ruled in De Lille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834, and in State ex rel. Hussman-Ligonier Co. v. Hughes, supra, that where an injury is the result of natural causes and not the result of an accident while the employee is performing his usual duties, compensation may not be awarded. However, where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall".

This reasoning and result is, we think, in accord with the opinion in State ex rel. United Transports, Inc. v. Blair, et al. en Banc., 352 Mo. 1091, 180 S.W.2d 737, where claimant was changing an automobile tire. A lug was obstinate and ordinary force did not remove it, so the employee exerted unusual force in an unusual way by putting his foot on the pipe and tugging, which he did not ordinarily do. It was ruled the resultant injury was an accident and the result of the abnormal way he was doing the work of removing the tire.

In the case before us the claimant was carrying on normal work in the usual way —a performance strictly in accordance with the procedure followed by all other employees for years in doing the same task. It was not an unusual task and no abnormal method was involved. The occurrence or event was not an accident within reasonable purview of the Act.

We believe there was substantial and competent evidence to support the Commission's finding that claimant did not sustain an accident, that the sour solution was not in itself harmful or deleterious, and that it was not the producing cause of her neuropsychiatric disability. We think the Commission could reasonably reach the result it did reach.

The judgment of the Circuit Court affirming the order and award of the Industrial Commission denying compensation is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.