Fed Leon BROTHERTON, Plaintiff-
Appellant,

v.

INTERNATIONAL SHOE COMPANY,
Defendant-Respondent.

No. 8948.

Springfield Court of Appeals.

Missouri.

Sept. 6, 1962.

Richard D. Moore, Green & Green, H. D. Green, West Plains, for plaintiff-appellant.

James E. Garstang, C. Lawrence Mueller, Louis W. Riethmann, St. Louis, for defendant-respondent.

RUARK, Presiding Judge.

This is a Workmen's Compensation case involving an alleged lower back strain or sprain.

Appellant's initial claim was that on *June 12, 1958,* "while unlocking a preparator [perforator?] machine, was using long wrench with pipe over handle of wrench. Claimant moved out on end of pipe, pipe bounced throwing claimant in strained position resulting in present injury."

At the hearing (held June 16, 1960) before the referee, claimant testified that he was 23 years old and had been working for the International Shoe Company for approximately two years prior to the injury. His work was "belt boy or maintenance and handy man." "We was unlocking a preparator [perforator] machine, we tried practically every way we knew and nothing worked so we got a long pipe wrench and put on the shaft and tried to break it loose, that didn't work, so we got a pipe to put over the handle of the wrench for more leverage and we was out on the handle of the pipe bouncing up and down on it, I was bouncing on my right foot and when I come down my right foot slipped. I told the employee that was with me I hurt my back." (Objection to the portion concerning his statement to his fellow employee was sustained.) He said it "felt like something tore loose" on the right side of the lower back.

The fellow working with him, Woodworth, "was the machinist over me." On that day he went to see the foreman and reported that he had hurt his back while unlocking the perforator machine. The foreman sent him to the first aid room. He went "and she [the woman in charge] put it down on the record and told me if I had any more trouble to come back." About a month later he went back "and told her my hip and back was bothering me and she put it down on the record again. Told me if I had any more trouble to come back." Approximately three months later his back bothered him "real bad again" and he went to first aid again and "told her something had to be done about it." "She" talked with the foreman and came back and said there was nothing he could do, so he went to a Dr. Wiles on his own. The employer offered no evidence to deny these reports of accident and injury. After his second trip to Dr. Wiles, claimant was sent to Dr. Yancey of Springfield, who examined him and prescribed a back brace. Afterwards he went back to Dr. Yancey for another examination. After the claim was filed the company sent him to Dr. Kelly of Jefferson City, who examined him. Later on the company sent him to Dr. Ritter of Cape Girardeau for examination.

Claimant testified that he continued at the same job and had not lost any time from work except when he went to see the doctors but that his back bothered him "when I lift, stoop to pick something up, drive the car very far or turn quick, twist," and that he had complained to the foreman several times. He had obtained a subpoena for the appearance of J. T. Woodworth (the machinist who was working with him), but we gather from colloquy of counsel that the witness had left the area. Claimant had been a member of the National Guard and since his injury, had gone to two weeks' camp with the Guard on two occasions. On the first trip he tried drilling and couldn't and was put in the kitchen as a cook apprentice. On the second trip he did no drilling and was assigned as telephone oper-

ator, riding back and forth at the company outpost on a Jeep or truck.

The deposition of Dr. Kelly of Jefferson City was introduced. He stated that he examined claimant on September 22, 1959. Claimant gave a history of being employed as a belt boy or maintenance man. Claimant and another employee were using a pipe wrench with a pipe extension to loosen a machine and in so doing they pulled up and down, and he felt a sudden severe pain in his lower back as if something were loose in his back. He then described the complaints of the claimant concerning pain in his lower back. "Then as a conclusion according to the history and examination, this man strained his back while at work either in May or June 1958." He gave it as his opinion that "this patient has approximately ten per cent permanent partial disability in his back which could very well improve as time goes on."

By agreement of the parties, there were offered and received in evidence two written reports of Dr. Yancey of Springfield, on the part of claimant, and a written statement or report by Dr. Ritter of Cape Girardeau, this by the respondent.

Dr. Yancey's report of an examination made on May 18, 1959, related the history that claimant was using a large pipe wrench and a pipe under the handle of the wrench to give more leverage and was pulling on the handle, which was over his head, when he experienced a sharp pain in the lower portion of his back. "Diagnosis: Chronic lumbosacral strain with mild sciatic radiation. * * * Comment: I believe this man sustained a low back injury at the time he described and from which he has not completely recovered." He recommended that claimant be fitted with a low back support and stated that he felt he could continue his regular work if such support was fitted to him. He estimated that claimant had approximately 10% permanent disability to his low back.

The report of Dr. Ritter offered by respondent was a result of an examination made April 1, 1960. He related a history, as stated to him by the claimant, that a perforator machine had centered on the dies and in an effort to unlock its fixed position they decided to get a heavy long monkey wrench applied to the shaft in order to break it loose. This was unsuccessful, so a long steel pipe was attached to the handle of the wrench. The extension is said to have been about six or eight feet long. Claimant and another man took hold of the handle, pulling it first up and then down. The spring of the pipe would pull them off the floor and claimant came down bouncing on the right leg. His foot came in contact with the floor and he slipped on some leather shavings and turnings, thus losing his balance. He was pulled back up, at which time he said he let go of the pipe and felt as though something had struck him in the back with a knife.

After dealing with present complaints and further history, then his own examination, the doctor stated that the findings are entirely subjective, but *"on the basis of the history given"* it was his opinion that claimant had a back sprain and that his disability rating, if any, should not be in excess of 5%.

■ The referee found that the claim was not filed within one year and therefore denied compensation. However, the final decision of the commission which we review was not based on that ground and in this appeal the respondent does not make any contention in that regard. Since the one-year requirement is a statute of limitations [1] and limitations is an affirmative defense,[2] it would appear that it has been

1. Buecker v. Roberts, Mo.App., 200 S.W. 2d 529, 532; Wentz v. Price Candy Co., 352 Mo. 1, 175 S.W.2d 852, 855.

2. Curlee v. Donaldson, Mo.App., 233 S.W. 2d 746, 756; Kopp v. Moffett, 237 Mo. App. 375, 167 S.W.2d 87, 91; Ottenad v. Mount Hope Cemetery & Mausoleum Co., Mo.App., 176 S.W.2d 62, 65.

abandoned, and we will not concern ourselves with it. In any event, it is the award of the commission, not that of the referee, which we review. Manning v. Manor Baking Co., Mo.App., 356 S.W.2d 505(4).

On appeal the finding of the Industrial Commission was:

"We find from all of the evidence that employee has failed to sustain his burden of proof in that he has failed to prove causation of his physical condition by the alleged slipping of his right foot as he tugged on the pipe in question. None of the medical witnesses testified to the effect that said condition was caused by said slipping of said foot.

"Nor is there evidence sufficient to establish an accidental injury under the doctrine of the case of Crow v. Missouri Implement Company, Mo., 307 S.W.2d 401. While employee's exertions in pulling on said pipe (which was on the handle of a wrench) may have been unusual, abnormal, and outside of the scope of his normal activities, the evidence does not so indicate.

"Compensation, therefore, must be and is hereby denied."

As we see it, the commission did not make its award based upon disbelief of the facts testified by the witnesses. (See Corp v. Joplin Cement Company, Mo., 337 S.W.2d 252, 258.) If we understand its findings, there is no finding that the employee did not suffer injury at the time or place he said he did; and there is no finding that the employee's foot did not slip. The finding is that there was no *causal connection* between the slipping and the injury.

The questions therefore are two, i. e., (1) whether the commission was justified under the evidence in denying the claim on the theory that there was no legal causation link between the slipping and the injury; and if such holding was correct, then (2) whether the commission was justified in holding that, sans slipping as a cause, the exertions at the end of the pipe were legally insufficient to permit the injury to be classified as an accident under the Compensation Act.

In reviewing these questions we feel it is not necessary to cite authority for the often repeated statements that we cannot substitute our judgment on a disputed question of fact for that of the commission, but that we can and must decide whether such body could reasonably have made the finding which it did; and that the burden is on the claimant to prove a compensable injury.

Referring now again to (1), i. e., that there was no causal connection between slipping and injury, and on the premise that the commission did not find that there was no injury or that there was no slipping: The elaboration that "none of the medical witnesses testified to the effect that said condition was caused by said slipping of said foot" indicates that the commission did not believe the evidence established the necessary connection between the occurrence of the slipping and the strain which produced the injury. This we believe to have been a conclusion as to the effect of the evidence and a conclusion of law based on that conclusion. If the ruling be based on an interpretation of the law, or the legal conclusion to be drawn from the evidence, or the application of the law to the facts, we are not bound by it. Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65–67, and cases there cited; Williams v. Great Atlantic & Pacific Tea Co., Mo.App., 332 S.W.2d 296, 298; Specie v. Howerton Electric Co., Mo.App., 344 S.W.2d 314, 316. And in interpreting the written statements and the deposition of the doctors, we do not owe the same amount of deference we would if the question had been one raised by the interpretation of or drawing of inferences from the testimony of persons who appeared and testified. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 652.

First as to the slipping. If the commission was of the opinion that no causal connection was established between the slip and the injury because there was no medical evidence to that effect, then we think it was following a wrong theory. In the establishment of causal connection it sometimes becomes necessary, and very often is most convenient, to accomplish this object by medical opinion. But proof by medical opinion might be impossible in some instances, and medical opinion is not necessarily the only way that such connection may be proved. Garrison v. U. S. Cartridge Co., Mo.App., 197 S.W.2d 675, 676; Nick v. International Shoe Co., Mo.App., 200 S.W.2d 590, 593.

We believe that the actual *event* which caused the injury was not, in contemplation of the law (since Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401), the fact of slipping but the *abnormal strain* or stress that was produced in the whole occurrence. The *abnormal strain* caused the injury to parts of the body. The event of this strain was preceded by several almost simultaneous occurrences, including the bouncing on the end of the pipe with upraised arms, the striking the floor, the slipping, the jerking upward. When all these things occurred practically simultaneously, we doubt whether any doctor could, as a matter of medical opinion, separate and isolate any certain one, point his finger at it, and say that one isolated portion of the occurrence was responsible for the abnormal strain and another had nothing to do with it. In Jones v. Purity Textiles Corp., Mo.App., 328 S.W.2d 714, 717, it was held that where the events followed in rapid succession, and formed one continuous chain uninterrupted by any intervening cause, and terminated in the employee's injury, they could not logically be separated. And we think the whole occurrences testified to in this case must be considered as one incident.

The commission stated no medical witness testified to the effect that the condition was caused by the slipping. This, as a bare factual statement, is true. But it does not fairly cover the situation. The statements of the doctors were introduced in evidence by agreement. These statements stood in lieu of the depositions of the doctors, and they should be accepted as, or at least in lieu of, testimony. We note that defendant's medical witness Ritter (by statement) carefully and in great detail related the history of the occurrence, including the bouncing on the end of the pipe, the striking the floor, the slipping, the loss of balance, the being pulled back up and letting go of the pipe, at which time the claimant felt the pain.

■ Disregarding the question of whether facts stated to the doctor as to the history of the injury are ever of any probative value in determining whether the events related in that history really happened,[3] we are of the opinion that, when the facts which make up the history are in evidence, in so far as they are relevant or helpful to the diagnosis, the history so taken is of probative value as a part of the doctor's diagnosis and medical opinion in proving the nature, character, extent, and sometimes the causation of the injury if the circumstances make that an issue. Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780, 782; Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, 671; Coghill v. Quincy, O. & K. C. Ry. Co., Mo.App., 206 S.W. 912, 913; Albert v. Krey Packing Co., Mo.App., 195 S.W.2d 890, 894; Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 667, 55 A.L.R.2d 1022. And there was no objection to any portion of the history related by the doctors.[4] As a matter of fact, the most

3. See 31 C.J.S. Evidence § 193, p. 924.

4. See review and emphasis on objection in Schears v. Missouri Pacific Railroad Co., Mo., 355 S.W.2d 314; see Hermann v. St. Louis Public Service Co., Mo.App., 345 S.W.2d 399, 405; Terrell v. Missouri-Kansas-Texas Railroad Co., Mo., 327 S.W.2d 230, 240.

complete history was in the medical opinion of the witness Ritter offered by the employer.

■ The doctor stated that "on the basis of the history given" claimant had sustained a low back sprain. Since the claimant had testified to substantially the same facts as were related in the history, we think that the doctor's opinion, coupled with the history upon which he based his opinion, took the place of a hypothetical question, and that the conclusion drawn by him established a causal relationship between the occurrences, which, taken together, constituted one incident, and the injury which resulted.

The foregoing views are based upon the premise that the commission did not find against the slipping (but only against the causal connection) and that the slipping was necessary to constitute the occurrence an accident within the meaning of the Workmen's Compensation Act. But *was the slipping a necessary ingredient?*

In Crow v. Missouri Implement Tractor Co., Mo.App., 301 S.W.2d 423, a case where a man had previously held up (by upraised arms) the elevator of a corn picker "once or twice" before but on the occasion in question was engaged in supporting a newer and heavier model and suffered an *abnormal strain* which resulted in a coronary occlusion, this court held that there was no "accident" within the meaning of the Workmen's Compensation Act because there was no outside intervention, and that a body strain, in and of itself, was not sufficient. But in Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401, loc. cit. 404, the Supreme Court overruled that decision and stated, "We find that the general rule is that an abnormal strain causing injury to workman may be classified as an accident," and accordingly held loc. cit. 405, "However, where an employee's injury is the result of an unusual or *abnormal strain* arising out of and in the course of his employment, the injury is compensable. An ab-

normal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall." The question we have in mind is whether or not, in order to be compensable, the *abnormal strain* may be one which arises while the employee is engaged in his normal activities or whether it must be one which can be produced only when the employee is doing his work in an "abnormal manner." The Crow case does not *hold* that the employee must be engaged in an "abnormal" activity. The doubt as to that question arises from the fact that this feature was mentioned in State ex rel. United Transports, Inc., v. Blair, 352 Mo. 1091, 180 S.W.2d 737, from which the Crow case quoted. In the Blair case the employee was injured in removing a tire rim lug which was stuck. The removal required the exercise of extraordinary force and the employee put his foot on the pipe and pulled and tugged, thus receiving the *abnormal strain.*

On the other hand, the Crow case overruled Howard v. St. Louis Independent Packing Co., Mo.App., 260 S.W.2d 844, (holding "no accident") where the employee *was* apparently engaged in his normal and usual duties in a normal manner but received an abnormal strain simply because the forequarter of beef lifted was larger than customary. An examination of the cases cited by the Crow case in support of the general rule at loc. cit. 404–405 reveals that a majority of them were cases in which the employee sustained an "abnormal strain" while engaged in pursuit of his routine duties

In Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, a man engaged in installing kitchen equipment got under a table and, raising himself on his toes, gave an "extra surge of power" and hurt his back. We said that "where an employee suffers an *unexpected and abnormal strain* (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury which is not the result of orderly

natural causes, the injury is an accident within the meaning of sec. 287.020(2)."

■ We now conclude that the *unexpected and abnormal strain* is the important event. This will *usually* result from the doing of the work in an "abnormal manner" or in doing work which is not routine, but it is not necessarily so. Witness the Howard case, supra, now overruled. And of course the *abnormal and excessive strain* must be such as of and in itself produced the injury. This rules out those injuries which result from the normal stresses and strains of work which are the product of routine stresses combined with inherent weakness or bodily defect, chronic disability, or natural causes. Smith v. General Motors Corp., Mo., 189 S.W.2d 259; De Lille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834; see Smith v. Cascade Laundry Co., Mo.App., 335 S.W.2d 501. There was no evidence of inherent weakness or chronic condition (prior to the injury) in this case, and we therefore conclude that the claim came within what we conceive to be the doctrine of the Crow case.

If, however, the Crow case be construed, along with the Blair case, to pronounce the doctrine that the *abnormal strain* must be a product of doing the work in an abnormal or unusual manner, then we are of the opinion that the claimant's case is *still* within the doctrine. What *is* the "abnormal" or unusual way or manner for a handyman to do his work? In this case the claimant was engaged in helping another employee unlock a machine which had become centered on the dies. "We tried practically every way we knew *and nothing worked.*" Then they got a long pipe wrench and tried it. *That didn't work either.* Then they got a pipe and put it over the handle of the wrench and got out on the end of the handle and were bouncing up and down on it.

■ We think the very description of the affair depicts an unusual and extraordinary means used in an effort to unlock a machine after "nothing [else] worked." Certainly the attaching a pipe to a wrench, getting out to the end of it and bouncing up and down is as "abnormal" as a man putting his foot on the lug wrench in order to loosen a lug.

For the reasons aforestated, the judgment of the circuit court is reversed and remanded with directions to reverse the award of the commission and remand it to such commission for further proceedings.

STONE, J., Dubitante.

McDOWELL, J., concurs.